1  BRIAN W. BOSCHEE, ESQ.
   Nevada Bar No. 07612
2  E-mail: bboschee@nevadafirm.com
   JAMES D. BOYLE, ESQ.
3  Nevada Bar No. 08384
   JOANNA M. MYERS, ESQ.
4  Nevada Bar No. 12048
   E-mail: jboyle@nevadafirm.com
5  HOLLEY DRIGGS WALCH
   FINE WRAY PUZEY & THOMPSON
6  400 South Fourth Street, Third Floor
   Las Vegas, Nevada 89101
7  Telephone:     702/791-0308
   Facsimile:     702/791-1912
8

9  HARRY W. LIPMAN, ESQ.
   hlipman@rlrpclaw.com
10 RICHARD E. ROSBERGER, ESQ.
   rrosberger@rlrpclaw.com
11 ROTTENBERG LIPMAN RICH, P.C.
   230 Park Avenue, 18th Floor
12 New York, New York 10169
   Telephone:     212/661-3080
13 Facsimile:     212/867-1914

14 *Pro Hac Vice Applications Forthcoming*

15 *Attorneys for Plaintiffs*

16                    **UNITED STATES DISTRICT COURT**

17                        **DISTRICT OF NEVADA**

| | |
|---|---|
| 18  ZITAN TECHNOLOGIES, LLC, a Nevada limited liability company; and GINKGO LLC, a Nevada limited liability company, | |
| 19 | CASE NO.: |
| 20                  Plaintiffs, | **COMPLAINT** |
| 21        v. | |
| 22  LIANG YU, an individual, | |
| 23                  Defendant. | |

24        Plaintiffs Zitan Technologies LLC ("Zitan") and Ginkgo LLC ("Ginkgo" and collectively

25  with Zitan, "Plaintiffs" or the "Company"), for their complaint against Defendant Liang Yu

26  ("Yu" or "Defendant"), hereby allege as follows:

27                        **NATURE OF ACTION**

28        1.    This action arises out of Yu's misappropriation of the trade secrets of Zitan, his

former employer, and its affiliate Ginkgo.  Shortly before voluntarily resigning his employment in April 2018, Yu downloaded over one hundred files containing the Company's trade secrets from its account with Dropbox Paper ("Dropbox"), a cloud-based file hosting service, most to his personal computer and potentially to other electronic devices, storage units or mediums.

2.     After uncovering Yu's misconduct, Ginkgo demanded that Yu turn over his personal computer and other electronic devices to a forensic examiner for review and analysis. According to Yu, he instead promptly destroyed and discarded his personal laptop's hard drive. Yu further refused to turn over his personal computer and other electronic devices for review and analysis.

3.     Therefore, Plaintiffs bring this action for breach of contract, common law misappropriation of trade secrets, violation of the Nevada Uniform Trade Secrets Act (NRS § 600A.010 *et seq.* (the "UTSA")), and violations of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (the "DTSA") and Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), seeking: (1) a permanent injunction, as well as interim emergency injunctive relief, barring Yu from further retaining, using, disclosing or transferring any of Plaintiffs' confidential information; (2) an order barring Yu from further destroying evidence of his misappropriation; (3) an order directing the preservation and forensic examination of all Yu's remaining personal electronic devices, including, without limitation, any telephonic devices, laptops, thumb drives or external hard drives, that he has not destroyed, and his cloud-based and any other third-party email, document storage, or back-up accounts (the "Accounts"); (4) an order directing Yu to provide account information to the providers of the Accounts and requesting that they preserve the information contained in such Accounts; (4) confirmation of an award made in arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*; and (5) attorney's fees incurred in connection with pursuing this action pursuant to an agreement between the parties and pursuant to statutory allowances.

4.     Each of the willful, intentional and wrongful acts of Defendant, as alleged herein, occurred despite the fact that Yu was a former employee of the Company who was bound to the unambiguous terms and conditions of an "Agreement to Protect the Company's Information and

other Business Information" (the "Zitan Confidentiality Agreement")[1] and despite the proprietary and confidential assets of Plaintiffs—which Yu caused to be wrongfully appropriated for the benefit of himself and/or other third parties—being expressly protected against such misappropriation by the terms and conditions of the Zitan Confidentiality Agreement, additional contractual agreements, the UTSA, and the general protections of Nevada and federal law.

## PARTIES

5.     Plaintiff Zitan is a limited liability company organized under the laws of the State of Nevada with a principal place of business in Incline Village, Nevada.  Changchun Shi ("Dr. Shi") is its Chief Executive Officer.

6.     Plaintiff Ginkgo, an affiliate of Zitan, is a limited liability company organized under the laws of the State of Nevada with a principal place of business in Incline Village, Nevada.  Dr. Shi is the Managing Member of Ginkgo.

7.     Upon information and belief, Defendant Yu is presently a resident of the State of California, residing at 312 Anderson Road, Alameda, California 94502.

## JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as this action involves a claim arising under the laws of the United States, in particular, the DTSA and the CFAA.

9.     This Court also has supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367 because all of Plaintiffs' claims are so related that they form part of the same case or controversy.

10.    This Court has personal jurisdiction over Yu by virtue of the forum selection clause contained in the Zitan Confidentiality Agreement, and pursuant to NRS § 14.065, as Yu, during the relevant time period, worked and resided in Nevada, and the claims herein are connected to Yu's wrongful acts in Nevada as alleged herein.

///

---

[1] A true and accurate copy of the Zitan Confidentiality Agreement is separately filed as Ex. A to the concurrently-filed Plaintiffs' Motion to File Under Seal.

11.    Venue is proper in this District pursuant to the forum selection clause contained in the Zitan Confidentiality Agreement (which designates the federal courts in Washoe County, Nevada for venue) and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in this District.

12.    Pursuant to the Zitan Confidentiality Agreement, the parties agreed that each could seek emergency injunctive relief in any court of competent jurisdiction.  The parties also agreed that any other aspects of such a dispute, including a request for monetary damages, must be arbitrated under the rules of the American Arbitration Association and arbitrated in Washoe County, Nevada.

## FACTUAL BACKGROUND

### I.    The Company and Its Confidential Trading Strategies

13.    Zitan and its affiliate Ginkgo are proprietary investment firms and algorithmic trading companies that engage in trading, investment and other business activities on a global basis. Both have developed trading and business strategies, real-time reporting, post-trade analysis, and technologies that are built on unique trading algorithms, mathematical models, predictive signals, computer code, infrastructure design, and other proprietary information and trade secrets.

14.    The Company's technology and trading strategies gain immensely from its proprietary trading automation that provides superior high-speed processing of a huge amount of market information and instantaneous reaction to market changes.  This and the Company's other trade secrets have given it an advantage in predicting future prices and executing profitable trades at the highest speeds.  The Company has devoted substantial resources to developing such trade secrets.

15.    To maintain its competitive superiority, the Company must retain the confidentiality of its trading strategies and technology; if such information were leaked, it would cause the Company grave and irreparable harm.

16.    To prevent such unauthorized use and dissemination, Ginkgo employs strict measures to keep its proprietary information and technology confidential.  Ginkgo employees

- 4 -

must agree to stringent confidentiality covenants as a condition of their employments.  Ginkgo makes sure that each employee is aware of and bound by internal compliance and communications policies that restrict access and the use of Ginkgo's confidential information.  In addition, the Company password protects its computer systems and uses role-based access control lists to limit access to data and resources.

**II.    Yu's Employment and the Agreements and Policies Protecting the Company's Trade Secrets**

17.    Yu began working for Zitan in or around May 4, 2015 as a Quantitative Researcher reporting directly to Dr. Shi.   Under the terms of his employment, Yu agreed to comply with all of Zitan's policies and procedures. *See* Letter, dated April 27, 2015, signed by Yu and Zitan (the "Zitan Employment Agreement").[2]

The Zitan Confidentiality Agreement.

18.    Yu entered into the Zitan Confidentiality Agreement on April 28, 2015.

19.    Pursuant to the Zitan Confidentiality Agreement, Yu agreed not to use Zitan's "Confidential Information" for his own benefit or the benefit of any person or entity other than Zitan, not to disclose Zitan's "Confidential Information" to any third party, and to return all records, materials, property, documents, and data relating to Zitan's business upon termination of his employment.

20.    The Zitan Confidentiality Agreement defined "Confidential Information" to include information not generally known to those outside of Zitan relating to, among other things, its business, techniques, programs and programming code, software programs, models, trades, operations, performance, and investment strategies and plans.  Excluded were general skills, knowledge and experience Yu gained during his employment or information that was or became publicly available.

21.    Confidential Information was defined to include "information shared with the Company by any other person or entity if received from that person or entity pursuant to an

---

[2] A true and accurate copy of the Zitan Employment Agreement is separately filed as Ex. B to the concurrently-filed Plaintiffs' Motion to File Under Seal.

13119-01/2083741.docx

agreement (oral or written) to keep it confidential." So protected, Ginkgo shared with Zitan its confidential information, including its trade secrets, pursuant to a licensing agreement that requires Zitan to keep this information confidential.

22.     Under the Zitan Confidentiality Agreement, Yu also agreed to "faithfully and diligently perform the duties assigned to [him], to act in the Company's interests at all times, and to abide by all of the Company's policies and procedures as well as applicable federal, state, local and foreign laws, regulations, and ordinances."

23.     Yu acknowledged that "[b]ecause money damages for the breach or threatened breach of [his] obligations under this Agreement may be inadequate to compensate the Company fully for the harm it has suffered or will suffer, the Company may seek and obtain injunctive relief…or specific performance…or other remedies in equity…without being obligated to show actual damages." The provision then provided that "[i]n connection with any claim based upon a breach or threatened breach of this Agreement, the prevailing party shall be entitled to payment of its reasonable attorneys' fees and costs by the non-prevailing party."

24.     Finally, under the Zitan Confidentiality Agreement, the parties agreed that they could seek emergency injunctive relief from any court of competent jurisdiction, while any claims for monetary damages needed to be arbitrated in Washoe County, Nevada pursuant to the rules of the American Arbitration Association.

The Data Policy

25.     On November 20, 2015, Ginkgo adopted a Source Code and Trading Data Policy (the "Data Policy"), which, by its terms, applies to Ginkgo and Ginkgo's affiliates, such as Zitan, and their employees. On November 21, 2015, Yu signed an acknowledgement of the Data Policy in which he agreed to abide by it.[3]

26.     Pursuant to the Data Policy, the following rules were put in place to protect the Company's trade secrets and proprietary information:

///

[3] A true and accurate copy of the Data Policy is separately filed as Ex. C to the concurrently-filed Plaintiffs' Motion to File Under Seal.

a. "Only Company Issued laptops and devices may be used to connect to the Authorized Systems [defined as servers within the Company's office or data center locations], and only terminal control data . . . may be exchanged between a Company-Issued device and an Authorized System.   No file transfers may occur between any Authorized System and a Non-Authorized System";

b. "Copying or moving data outside of the appropriate file storage locations … may expose data to groups who are not authorized access.   Therefore, approval must be requested to copy or move data from an area of greater security to an area of lesser security and appropriate safeguards must be put in place to ensure the data is restricted to approved users";

c. "[S]ource code and trading data may not be moved from the servers onto your personal laptop, USB devices, cloud based storage, personal email, etc., as this bypasses the group policies and access control lists and could lead to access by third-parties without our explicit approval"; and

d. "[T]he Company may permit or require Authorized Users to have remote access to the Authorized Systems.   In such case, each Authorized User using remote access to the Authorized Systems will be required to use the Company's virtual private network connection (VPN) and the assigned Company laptop for all remote access to the Systems . . . This Remote Access may only be used by the Authorized User and no Source Code or Trading Data may be copied out of an Authorized System."

Zitan's Communication Policy

27.   Zitan adopted and issued a "Communication and Information Systems Policy" (the "Communication Policy"), applicable both to Zitan and all of its affiliates and their employees, which Yu signed on September 19, 2016.[4]

---

[4] A true and accurate copy of the Communication Policy is separately filed as Ex. D to the concurrently-filed Plaintiffs' Motion to File Under Seal.

13119-01/2083741.docx

28.     The Communication Policy provides that Yu and other authorized users have access to the Company's systems only for legitimate and authorized business purposes of the Company. It further warns that "[u]nder no circumstances may Authorized Users [defined to include employees of Zitan] use the Company's Systems to . . . [t]ransfer or copy any Company-related files to a personal drive, other storage device or other storage system."

### The Termination Letter

29.     On April 9, 2018, Yu resigned his employment with Zitan.  Zitan and Yu thereupon signed a termination letter (the "Termination Letter") in which Yu "acknowledge[d] that [he] continue[s] to be bound by all of the obligations [he] agreed to with the Company that survive termination of employment, including [his] obligations to maintain the confidentiality of confidential information … as described in the [Zitan Confidentiality Agreement].  [Yu] further acknowledge[d] that [he had] returned all property, both physical and electronic, as outlined in the [Zitan Confidentiality Agreement] section 2. Return of Confidential Information."[5]

### III.    Yu Downloads the Company's Trade Secrets Shortly Before Resigning from Zitan

30.     Shortly following Yu's termination, two red flags appeared.  First, Yu posed certain questions relating to his non-compete obligations (which the Company invoked to encompass a 12-month period), including about the proper scope of the restricted area relating to his non-compete, that provoked concerns that Yu might try to avoid his obligations.  Second, and most egregiously, the Company discovered that just prior to giving notice, Yu had downloaded a large amount of the Company's proprietary information from its Dropbox account, and had attempted to delete information relating to another of the Company's cloud-based accounts from the Company's servers and his work laptop.

31.     Upon uncovering these facts, on May 3, 2018, Plaintiffs, through counsel, wrote to Yu to: (1) inform him that his employment with Zitan was retroactively terminated for cause; (2) demand that he immediately return all Company information; (3) demand that he turn over to a forensic vendor to be chosen by Zitan all of his personal electronic devices capable of storing

---

[5] A true and accurate copy of the Termination Letter is separately filed as Ex. E to the concurrently-filed Plaintiffs' Motion to File Under Seal.

any information and disclose to such vendor his usernames and passwords to all third-party electronic storage facilities to permit inspection; and (4) demand that to the extent that Yu did not immediately return all Company information, Yu preserve all potentially relevant electronically stored information, documents, data and metadata, including his personal devices.

32.    Following this communication, the Company sent an image digitally reconstructing the hard drive of Yu's work computer to a forensic consultant, T&M Protection Resources, LLC ("T&M"), retained by the Company's attorneys to conduct a comprehensive forensic review. The Company's findings, as well as those of T&M, were staggering: Yu had improperly downloaded a total of some 114 files from Zitan's Dropbox account, most of which he downloaded on March 23, 2018 (during Yu's last full month of employment) to what appeared and was later confirmed to be his personal computer.  These files contained Plaintiffs' valuable trade secrets ("Plaintiffs' Trade Secrets and Confidential Assets"), including, without limitation, the following:

| FILE | DESCRIPTION |
|---|---|
| Sprd Product Strategies 跨期交易 | Proprietary paper setting forth a detailed discussion about developing a new trading strategy. |
| add customizable plots to pulse | Proprietary paper discussing an internally used technology and notes on how to implement that technology; contains some code snippets |
| Eurex market data (EOBI) | Proprietary paper with discussion between developer and CTO that contains code snippets and troubleshooting advice concerning connecting to Eurex market, developing framework for trading, overcoming possible complications, and handling various types of trade. |
| Implementation of statistical arbitrage | Proprietary paper involving trade strategy and how to implement said strategy; includes previous case studies to help determine potential profit. |
| Meeting notes: FTA meeting | Meeting notes from April 2017 through February 2018 which discuss future trading plans, innovative research methods, experimental trades, new technologies, simulation and execution of trades, PnL numbers, trading signal ideas, etc.; contains code snippets and graphs that represent the results of experiments. |

| | |
|---|---|
| Impact of OH Priority Between t+0 and t+1 for I_G0 Trading | Sensitive proprietary paper which portrays simulation trading activity of multiple strategies using various parameters, including charts that show the daily and cumulative PnL, logs that show the number of orders placed and the fill ratio, descriptions of the types of strategies we run and comparisons between other strategies. |
| Associating SourceID and FH/Dataset | Proprietary paper which details a naming convention/approach that Ginkgo uses to solve certain problems which standardizes a way to extract the name from the data feed and pair it with the appropriate table or trading strategy |
| DRL_experiment_liang | Proprietary paper containing code which details groundbreaking research and new technologies leading to experimental trading. Paper displays performance data, PnL numbers, and other factors between two trading models. |
| Zitan Market Making | Proprietary paper which discusses multiple strategies, their performance, and how they can be improved. |
| Zitan QR Meeting | Proprietary paper which details Quantitative Researcher meetings – including research ideas and simulation trades – and contains some code. |
| Zitan RT Weekly | Extremely sensitive proprietary paper with some code that includes real-time detailed descriptions of trading issues, how issues were solved, strategy performance, tweaks to improve performance, as well as account and broker information. |
| Zitan trade log (aka zlog) August 2017 | Proprietary paper including detailed and sensitive information such as account numbers, passwords, performance, PnL numbers, exchange and broker communications, multiple charts and graphs, trading plans, and almost all other aspects of trading activity; contains some code. |
| Kickoff Faster Machine Learning With GPU | Proprietary paper that describes alternative technologies Ginkgo is experimenting with. |
| dz3 ctp source replacement debugging session | Proprietary paper which includes code; Discusses bug and how to fix it. |
| Strategy Logging Best Practice | Proprietary paper discussing inactivity experienced during active trading sessions and how to fix bugs; contains some code. |
| CN Crude Oil Futures | Proprietary paper containing sensitive information such as brokers, account numbers, passwords, IP addresses for trading machines, as well as a discussion about the trading strategies. |
| T1_rb_20170712 | Proprietary paper detailing discussions about a trading environment using detailed graphs to depict trading activity. |

| statistics on the DRL agent's simulation log | Proprietary paper detailing new trade strategies, simulation results and performance numbers. |
|---|---|
| Meeting notes: China Option Trading | Proprietary paper laying out a detailed agenda on entering new asset class in China including discussions from multiple meetings where an idea is described from conception to execution. |
| Production_history_market_making | Highly sensitive proprietary paper detailing which strategies ran on which day and with which colocation server |

33.   The Company and T&M, moreover, found that on March 23, 2018, the very same day that Yu had downloaded the majority of files [66] from Zitan's Dropbox account to his personal computer and, potentially, to other devices, Yu had also deleted some 26 files from another of Zitan's cloud-based accounts.  Because Yu deleted the only known copy, the content of these documents are lost, but the File names indicate they contain proprietary Company information. The file names include:

| Evernote Files |
|---|
| 2017 Contributions |
| AP_G0 |
| Attention is All You Need |
| DRL RB_G0 |
| Feed Message Sharder |
| Fill Model |
| HK Research |
| I_G0 DRL |
| L_G0 (DRL) |
| L_G0 DRL |
| Logging Practice |
| MBL Data on SHFE |
| NI_G0 |
| NI_G0 (night) |
| Passive Trading in China |
| RB_G0 (day) DRL |
| RB_G0 (night) |
| RB_G0 (night) |

13119-01/2083741.docx

| Reverse Spoof |
| --- |
| RNN Exploration |
| RU_G0 |
| Signal / Strategy Testing Procedures |
| so file -> sg file conversion |
| TF_G0 |
| To-Do List |
| ZN_G0 |

34.    Additionally, during a review of their computer systems, Plaintiffs discovered that Defendant, while employed by Plaintiffs and using their computer system, deleted at least 570 electronic files that Defendant had created. The deleted files are essential components of Plaintiffs' source code and Defendant's intentional deletion of such files was part of his willful and wanton effort to sabotage Plaintiffs' intellectual property and delete crucial elements of Plaintiffs' trading activities.  Defendant also deleted portions of his work laptop's command history in an attempt to cover his activities.

## IV.  Yu Purposefully Destroyed Further Evidence of His Misappropriation

35.    During much of this process, attorneys for the Company had communicated back and forth with counsel retained by Yu to determine whether, among other things, Yu would agree to turn over his personal devices to T&M so that the Company could forensically image and analyze them.

36.    These discussions ultimately led to the discovery that Yu tried to cover-up his wrongdoing.  In a letter dated May 23, 2018, Yu's counsel confirmed to counsel for the Company that, on March 23, 2018, Yu had downloaded files from the Company's Dropbox account to his personal computer.  In that same letter, Yu's counsel further divulged that following receipt of the Company's May 3, 2018 letter instructing Yu to preserve all documents, electronically stored information, data and metadata, Yu purportedly had instead "destroyed and discarded his personal laptop's hard drive."

///

37.   Despite this claimed intentional destruction of evidence, counsel for both sides continued to discuss a potential protocol relating to, among other things, the forensic examination of Yu's devices and accounts.  Ultimately, after a change of counsel by Yu, Yu's new counsel confirmed, in a letter, dated July 16, 2018, that Yu had "deleted or destroyed" the files that Yu downloaded on March 23, 2018, and that they had no interest in engaging in further negotiations with the Company.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

38.   Plaintiffs repeat and reallege each and every allegation set forth above and below as if fully set forth herein.

39.   Yu signed and agreed to the Zitan Employment Agreement, the Zitan Confidentiality Agreement, the Data Policy, the Communication Policy, and the Termination Letter.

40.   Under the Zitan Employment Agreement, Yu agreed to comply with Zitan's policies and procedures.

41.   Under the Zitan Confidentiality Agreement, Yu agreed to return, upon the termination of his employment, all Company documents and data, and to "faithfully and diligently perform the duties assigned to [him], to act in the Company's interests at all times, and to abide by all of the Company's policies and procedures."

42.   Under the Source Policy, Yu agreed, among other things, to use only Company-issued laptops and devices to connect to the Company's servers or data center locations; not to move any Company source code or trading data from the Company's servers or from data centers onto his personal laptop; and not to remotely access the Company's data location centers from personal devices without written authorization.

43.   Under the Communication Policy, Yu agreed not to transfer or copy any Company-related files to a personal drive, other storage device or other storage system.

44.   Under the Termination Letter, Yu agreed that he continued to be bound by the Zitan Confidentiality Agreement and expressly acknowledged that he had returned all information

- 13 -

1   covered by that Agreement to the Company.

2       45.   Each of the Zitan Employment Agreement, Zitan Confidentiality Agreement,

3   Source Policy, Communication Policy and Termination Letter is an enforceable agreement.

4       46.   The Company has complied with the foregoing agreements.

5       47.   Yu has breached each of the foregoing agreements by taking the actions described

6   herein, including, without limitation, downloading a large number of files containing the

7   confidential and proprietary information of the Company from the Company account on

8   Dropbox onto Yu's personal computer.  Yu threatens to further breach the Agreement by using

9   and disclosing the information he improperly acquired.  Among other things, he claims he

10   destroyed the hard drive of his personal laptop, thereby erasing evidence of his misconduct.

11       48.   Without an injunction, Yu will cause imminent and irreparable harm to the

12   Company for which the Company cannot be adequately compensated by monetary relief.

13                   **SECOND CAUSE OF ACTION**

14       **(Breach of the Covenant of Good Faith and Fair Dealing)**

15       49.   Plaintiffs repeat and reallege each and every allegation set forth above as if fully set

16   forth herein.

17       50.   Under Nevada law, Yu was imposed with an implied covenant of good faith and

18   fair dealing in his performance of the Zitan Employment Agreement, the Zitan Confidentiality

19   Agreement, the Data Policy, the Communication Policy, and the Termination Letter.

20       51.   Yu's breaches of the Zitan Employment Agreement, the Zitan Confidentiality

21   Agreement, the Data Policy, the Communication Policy, and the Termination Letter, as alleged

22   herein, constitute breaches of the implied covenant of good faith and fair dealing imposed

23   through each of these agreements.

24       52.   Yu's breaches of the implied covenant of good faith and fair dealing as alleged

25   herein have damaged Plaintiffs in an amount to be determined through arbitration.

26       53.   Without an injunction, Yu will cause imminent and irreparable harm to the

27   Company for which the Company cannot be adequately compensated by monetary relief.

28       54.   Yu's breaches of the implied covenant of good faith and fair dealing as alleged

herein have caused Plaintiffs to retain an attorney and to prosecute this action, and Plaintiffs are therefore entitled to recover their attorneys' fees and costs expended in bringing this action as special damages which were incurred as a result of Yu's breaches of the Zitan Employment Agreement, the Zitan Confidentiality Agreement, the Data Policy, the Communication Policy, and/or the Termination Letter.

**THIRD CAUSE OF ACTION**

**(Misappropriation of Trade Secrets In Violation of the UTSA)**

55.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

56.    The Company granted Yu access to its confidential and proprietary information so that Yu could perform his duties.

57.    Yu was given access to the Company's business, technical, engineering and design information, trading, investment and business plans and strategies, forecasts, trading accounts, performance data, PnL reports, computer programs and codes, valuation and trading models, trading technologies, and computer and network hardware and configurations.

58.    This information is not available to the general public and is closely guarded by Plaintiffs through, among other things, passwords, Access Control Lists, source code and communication policies, and restrictive covenants.  Plaintiffs keep such information strictly confidential in order to maintain an advantage in the highly-competitive high frequency trading business.

59.    Such information constitutes trade secrets under the UTSA because they (i) derive economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use, and (ii) are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

60.    Plaintiffs have expended considerable resources in developing such information. This information has been continually used in Plaintiffs' businesses, and is currently being used in Plaintiffs' businesses.

13119-01/2083741.docx

61. Yu misappropriated Plaintiffs' trade secrets, as set forth in Paragraph 32 above, including by downloading them from Zitan's Dropbox account to at least his personal laptop in violation of his obligations to the Company under the Zitan Confidentiality Agreement, the Data Policy, and the Communication Policy.

62. Accordingly, Yu has acquired trade secrets of the Company by improper means through willful breach of a duty to maintain secrecy and duties imposed by contract.

63. Yu, moreover, claims he destroyed and discarded his personal laptop's hard drive immediately after being instructed to preserve all of his data, including the files on his hard drive, thereby seeking to avoid detection of his misappropriation. For this reason, among others, Plaintiffs believe that Yu has disclosed or used, and intends to further disclose or use, the Company's trade secrets without consent of the Company and knowing that they were improperly acquired.

64. Yu's misappropriation of the Company's trade secrets as herein alleged was willful, wanton and reckless, and in disregard of the rights of the Company as the lawful owner of the trade secrets. Plaintiffs are therefore entitled to an award of exemplary damages in an amount not exceeding twice the actual damages awarded herein pursuant to NRS § 600A.050.

65. Plaintiffs are entitled to recover their attorneys' fees and costs incurred in this action as a result of Yu's misappropriation of the Company's trade secrets as alleged herein, pursuant to NRS § 600A.060.

66. Without an injunction, Yu will cause imminent and irreparable harm to the Company for which the Company cannot be adequately compensated by monetary relief pursuant to NRS § 600A.040.

## FOURTH CAUSE OF ACTION

### (Misappropriation of Confidential and Proprietary Information)

67. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

68. In connection with the performance of his duties for and on behalf of the Company, Yu became intimately acquainted with confidential information and proprietary information

- 16 -

13119-01/2083741.docx

rightfully belonging to the Company, including, without limitation, Plaintiffs' confidential and proprietary information.

69. Yu knew that said confidential and proprietary information was disclosed to him pursuant to a duty of confidentiality, and the obligation to comply with other policies relating to communications, source code, and trading data, as expressly set forth in the Zitan Confidentiality Agreement, the Data Policy, and the Communication Policy.

70. Yu wrongfully misappropriated the company's confidential and proprietary information.

71. Yu did not have express or implied permission or authorization from the Company to do any of the acts of misappropriation alleged herein.

72. Yu misappropriated the Company's confidential and proprietary information for his own economic benefit and/or the benefit of other third parties, and to the economic detriment of the Company.

73. The misappropriation of the Company's confidential and proprietary information by Yu has given him a competitive advantage to the detriment of the Company.

74. As a direct and proximate result of the wrongful misappropriation of the Company's confidential and proprietary information as alleged herein, the Company has been damaged in an amount to be determined through arbitration of this action.

75. The misappropriation of the Company's confidential and proprietary information as alleged herein was willful, malicious and oppressive, and done with an intent to injure the Company and with full knowledge of the adverse effects such acts would have on the Company, and/or was done with a conscious disregard of the Company's rights and with a willful and deliberate disregard for the substantial negative economic consequences to the Company, such as to constitute oppression, fraud or malice, and thereby entitling the Company to exemplary and punitive damages in an amount appropriate to punish or set an example of the Defendant, and to deter such conduct in the future, the exact amount of which is subject to proof.

76. Without an injunction, Yu will cause imminent and irreparable harm to the Company for which the Company cannot be adequately compensated by monetary relief.

13119-01/2083741.docx

## FIFTH CAUSE OF ACTION

### (Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836)

77.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

78.    The DTSA provides a federal private right of action for an "owner of a trade secret that is misappropriated ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

79.    Under the DTSA, a court is authorized to grant an injunction "to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable," including by "requiring affirmative actions to be taken to protect the trade secret." Id. § 1836(b)(3(A).

80.    The DTSA defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including . . . formulas . . . methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored," if the owner of the trade secret "has taken reasonable measures to keep such information secret," and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

81.    During the course of his employment with Zitan and in order to perform his duties on Zitan's behalf, Yu received access to Plaintiffs' proprietary information, including their business, technical, engineering and design information, trading, investment and business plans and strategies, forecasts, trading accounts, performance data, PnL reports, computer programs and codes, valuation and trading models, trading technologies, and computer and network hardware and configurations. This information derives independent economic value from it not being known to the public and not being readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts by Plaintiffs to maintain its secrecy.  The foregoing information therefore constitutes "trade secrets" under the DTSA. 18 U.S.C. § 1839.

13119-01/2083741.docx

82. Plaintiffs' trade secrets also are related to a product or service used in, or intended for use in, interstate or foreign commerce.

83. "Misappropriation" under the DTSA includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5)(A). "Improper means" under the DTSA includes "breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6).

84. Yu improperly acquired and misappropriated Plaintiffs' trade secrets, as set forth in Paragraph 32 above, by downloading Plaintiffs' confidential information, including its trade secrets, from Zitan's Dropbox account to at least his personal laptop, in violation of the Zitan Confidentiality Agreement, Data Policy, and Communication Policy.

85. Yu's improper and wrongful acquisition of Plaintiffs' confidential information, combined with Yu's destruction of his hard drive after being told to preserve evidence, also constitutes threatened misuse of Plaintiffs' trade secrets.

86. Because of Yu's misappropriation of Plaintiffs' trade secrets in violation of the DTSA, Plaintiffs are entitled to an injunction preliminarily and permanently enjoining Yu from possessing, retaining, using, or transferring any of Plaintiffs' confidential information; requiring Yu to return any of Plaintiffs' confidential information to Plaintiffs; and for the other relief sought herein. 18 U.S.C. § 1836(b)(3)(A).

## SIXTH CAUSE OF ACTION

### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g))

87. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

88. Yu knowingly and intentionally accessed Plaintiffs' data storage account with Dropbox in excess of authorization in violation of 18 U.S.C. § 1030(a)(2)(C).

89. Plaintiffs' data storage account accessed by Yu is a "protected computer" under the Computer Fraud and Abuse Act, as it is a "computer" used in and affecting interstate or foreign commerce, as those terms are defined under the statute.

90. Yu agreed to the Zitan Confidentiality Agreement, the Data Policy, and the

- 19 -

1    Communication Policy, which, among other things, obligated Yu to use only Company-issued

2    laptops and devices to connect to the Company's servers or data center locations; not to move

3    any Company source code or trading data from the Company's servers or from data centers onto

4    his personal laptop; and not to remotely access the Company's data location centers from

5    personal devices without written authorization.

6        91.   By logging into Zitan's Dropbox account and downloading Plaintiffs' trade secrets

7    to his personal laptop, Yu intentionally accessed Plaintiffs' computer in violation of his

8    agreements with the Company and the Company's policies.

9        92.   Through Yu's unauthorized access of Plaintiffs' data storage account, Yu obtained

10   information, including trade secrets, from those accounts, for his own personal gain.

11       93.   In response to learning of Yu's unauthorized access, Plaintiffs were compelled to

12   conduct an investigation using internal and external resources regarding this unauthorized access.

13   This investigation and remediation utilized and continued to utilize significant resources,

14   including the cost of investigation and remediation and the time and attention of senior

15   executives.

16       94.   As a result of the unauthorized access and abuse of its accounts, including the

17   subsequent investigation and remediation, Plaintiffs suffered a "loss" as a result of Yu's actions

18   in 2018 in an amount to be proven at arbitration of this matter.

19       95.   As a result, Plaintiffs are entitled to an injunction preliminarily and permanently

20   barring Yu from possessing, retaining, using, or transferring any of Plaintiffs' confidential

21   information, requiring Yu to return any of Plaintiffs' confidential information to Plaintiffs, and

22   for the other relief sought herein.  18 U.S.C. § 1030(g).

### SEVENTH CAUSE OF ACTION

### (Confirmation of Arbitration Award)

25       96.   Plaintiffs repeat and reallege each and every allegation set forth above as if fully set

26   forth herein.

27       97.   Pursuant to the Zitan Confidentiality Agreement, the parties agreed that aspects of

28   any dispute between the parties other than for emergency injunctive relief, including a request

for monetary damages, must be arbitrated under the rules of the American Arbitration Association.

98.   Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, the parties' arbitration clause is valid and enforceable.  Moreover, this Court is entitled to retain jurisdiction over this action during the pendency of the arbitration pursuant to 9 U.S.C. § 9.

99.   This Court is empowered to confirm an award entered in the parties' arbitration pursuant to 9 U.S.C. § 9.

WHEREFORE, Plaintiffs request judgment as follows:

1.   Entry of a permanent injunction, as well as interim emergency injunctive relief, barring Yu from further retaining, using, disclosing or transferring any of Plaintiffs' confidential information, pursuant to statutory and contractual allowances;

2.   Entry of an order barring Yu from further destroying evidence of his misappropriation;

3.   Entry of an order directing the preservation and forensic examination of all Yu's remaining personal devices, including, without limitation, any telephonic devices, laptops, thumb drives or external hard drives, that he has not destroyed, and his cloud-based and any other third-party email, document storage, or back-up accounts;

4.   Entry of an order directing Yu to provide account information to the providers of such Accounts and requesting that they preserve the information contained in such Accounts;

5.   Confirmation of an award made in arbitration pursuant to the Federal Arbitration Act, 9 U.S.C.  § 1, *et seq.*;

6.   An award of attorney's fees and other expenses and costs incurred in connection with pursuing this action pursuant to an agreement between the parties and pursuant to statutory allowances; and

///

///

///

///

- 21 -

7.     Such other and further relief as deemed just and equitable.

DATED this 17th day of August, 2018.

**HOLLEY DRIGGS WALCH**
**FINE WRAY PUZEY & THOMPSON**


_/s/ James D. Boyle_
BRIAN W. BOSCHEE, ESQ.
Nevada Bar No. 07612
JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
JOANNA M. MYERS, ESQ.
Nevada Bar No. 12048
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

ROTTENBERG LIPMAN RICH, P.C.

HARRY W. LIPMAN, ESQ.
RICHARD E. ROSBERGER, ESQ.
230 Park Avenue, 18th Floor
New York, New York 10169

_Pro Hac Vice Applications Forthcoming_

_Attorneys for Plaintiffs_

13119-01/2083741.docx