BRIAN W. BOSCHEE, ESQ. (NBN 07612)
Email: bboschee@nevadafirm.com
JAMES D. BOYLE, ESQ. (NBN 08384)
Email: jboyle@nevadafirm.com
JOANNA M. MYERS, ESQ. (NBN 12048)
Email: jmyers@nevadafirm.com
HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:     702/791-1912

HARRY W. LIPMAN, ESQ. (*PHV forthcoming*)
hlipman@rlrpclaw.com
RICHARD E. ROSBERGER, ESQ. (*PHV forthcoming*)
Email: rrosberger@rlrpclaw.com
ROTTENBERG LIPMAN RICH, P.C.
230 Park Avenue, 18th Floor
New York, New York 10169
Telephone:    212/661-3080
Facsimile:     212/867-1914

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ZITAN TECHNOLOGIES, LLC, a Nevada limited liability company; and GINKGO LLC, a Nevada limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> LIANG YU, an individual, <br><br> Defendant. | CASE NO.:    3:18-cv-00395-MMD-WGC <br><br> **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Pursuant to Fed. R. Civ. P. 65, LR 65-1, 18 U.S.C. § 1836, Nev. Rev. Stat. § 600A.010, *et seq.*, and the terms and covenants of contractual agreements, Plaintiffs Zitan Technologies LLC ("Zitan") and Ginkgo LLC ("Ginkgo") (collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby move this Court for entry of a Temporary Restraining Order and for entry of a Preliminary Injunction against Defendant Liang Yu ("Mr. Yu" or "Defendant").

Plaintiffs base this Motion for Temporary Restraining Order and Motion for Preliminary Injunction (the "Motion for TRO/PI") on the pleadings and records on file herein, the

13119-01/2087222.docx

Memorandum of Points and Authorities set forth below, the Declaration of Changchun Shi (the "Shi Decl."), the Declaration of Simon Ragona (the "Ragona Decl."), and the Declaration of Benjamin Cary (the "Cary Decl."), all of which are attached hereto and incorporated herein by this reference, and any oral argument of counsel received by this Court.[1]

## I.   **INTRODUCTION**

Plaintiffs seek the entry of a temporary restraining order and thereafter a preliminary injunction against Mr. Yu, a former employee, to prohibit the wrongful possession—and likely wrongful use and disclosure—of Plaintiffs' trade secrets and proprietary information and data, including, without limitation, trading and business strategies, real-time reporting, post-trade analysis, and technologies, which are built on unique trading algorithms, mathematical models, predictive signals, computer code, infrastructure design, and other related proprietary/confidential information and data (collectively, "Plaintiffs' Confidential Assets"), and because there is a significant risk that Mr. Yu will ***further*** destroy electronic and other evidence of his misappropriation before this matter can be fully adjudicated.

Shortly before Mr. Yu gave notice that he was ending his employment with Plaintiffs, Mr. Yu unlawfully downloaded a large volume of Plaintiffs' Confidential Assets to his personal computer and/or electronic storage devices, and further intentionally deleted numerous project files, in an attempt to sabotage and harm Plaintiffs. Mr. Yu attempted to cover his tracks by deleting evidence from both Plaintiffs' servers and his work laptop. Upon discovering Mr. Yu's misconduct, Plaintiffs demanded that he immediately return any and all copies of Plaintiffs' Confidential Assets and turn over his electronic devices for forensic review and analysis. Rather than comply with Plaintiffs' request, Mr. Yu reported that he had destroyed and discarded his personal laptop's hard drive, and Mr. Yu has subsequently refused to cooperate with Plaintiffs to resolve this matter without judicial intervention.

Plaintiffs are therefore forced to seek injunctive relief because Plaintiffs are exposed to, have suffered, and will continue to suffer, immeasurable irreparable harm to their business, and

---

[1] Plaintiffs submit as **Exhibits A – E**, respectively: (a) the Shi Decl. (portions of which are filed under seal); (b) the Ragona Decl.; (c) the Cary Decl.; (d) a [Proposed] Order Granting Temporary Restraining Order; and (e) a [Proposed] Order Granting Preliminary Injunction.

13119-01/2087222.docx

to their economic and competitive positions, due to Mr. Yu's willful, intentional and wrongful misappropriation of and sabotage of Plaintiffs' Confidential Assets. Absent an injunction enjoining Mr. Yu's wrongful possession—and likely use, dissemination, disclosure and/or exploitation—of Plaintiffs' Confidential Assets, enjoining of his further destruction of evidence, and requiring the preservation of evidence, such irreparable harms will continue.

## II.   STATEMENT OF RELEVANT FACTS

### A.   THE BASIS FOR THE MOTION FOR TRO/PI.

This action arises out of Mr. Yu's undeniable breaches of an "Agreement to Protect the Company's Information and Other Business Information" (the "Zitan Confidentiality Agreement") and related contracts,[2] his violations of the Defend Trade Secrets Act of 2016 ("DTSA") and Nevada's Uniform Trade Secrets Act ("UTSA") (or his violations of Nevada common law) regarding the protection of, unauthorized receipt of, and unlawful possessing and controlling of confidential and proprietary information, and his unlawful acts under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (the "CFAA").

In plain violation of the express terms and conditions of the Zitan Confidentiality Agreement, Mr. Yu made considerable efforts to systematically gather Plaintiffs' Confidential Assets, migrate or transfer those assets to electronic storage devices and mediums for at least his personal benefit, and deliberately deleted and sabotaged data and information from Plaintiffs' data storage mediums. Much of Mr. Yu's wrongful misappropriation and sabotaging of Plaintiffs' Confidential Assets occurred within one month of his resigning from employment with Plaintiffs, a timeframe in which he migrated an astonishing 114 files of data to at least his personal computer, including, without limitation: (a) 66 files copied from Zitan's Dropbox Paper account ("Dropbox"); and (b) the deletion of 26 files from Zitan's Evernote account. *See* Ragona Decl., at ¶¶ 14, 16, 24. Thus, Mr. Yu misappropriated considerable trade secrets and proprietary and confidential assets rightfully belonging to Plaintiffs, deleted or sabotaged large

---

[2] Mr. Yu is also bound to each of the following agreements (all of which protected and governed access to Plaintiffs' Confidential Assets): (a) an offer of employment letter dated April 27, 2015 (the "Zitan Employment Agreement"); (b) a Source Code and Trading Data Policy (the "Data Policy"); (c) a Communication and Information Systems Policy (the "Communication Policy"); and (d) a termination letter (the "Termination Letter") dated April 9, 2018. Copies of these confidential documents are attached as **Exhibits 7-1 to 7-5**, respectively, at Dkt. No. 7.

13119-01/2087222.docx

1   amounts of Plaintiffs' confidential and proprietary assets, and through a concerted and willful

2   effort obtained assets to improperly utilize same for his own benefit and/or the benefit of others.

3        Plaintiffs therefore seek entry of a temporary restraining order and a preliminary

4   injunction that enjoins Mr. Yu, and any and all agents, servants, partners, or any other persons

5   or entities acting for, with, by, through, under, or in association with Mr. Yu, from: (1)

6   possessing, using, exploiting, disclosing or disseminating Plaintiffs' Confidential Assets; (2)

7   utilizing the misappropriated Plaintiffs' Confidential Assets for the benefit of himself and/or

8   any third party; (3) requiring Mr. Yu to immediately return any and all electronic or hard copies

9   of Plaintiffs' Confidential Assets to Plaintiffs, or, in the alternative, ordering the seizure of said

10  assets from Mr. Yu; (4) requiring Mr. Yu to identify the location of each and every copy of any

11  of Plaintiffs' Confidential Assets within Mr. Yu's possession, custody, or control, and/or the

12  possession, custody and control of any and all agents, servants, partners, or any other persons or

13  entities acting for, with, by, through, under, or in association with Mr. Yu; (5) requiring Mr. Yu

14  to identify each computer, storage device, or storage medium to which Mr. Yu made, migrated

15  or copied Plaintiffs' Confidential Assets prior to deletion or destruction by Mr. Yu; (6) requiring

16  Mr. Yu to identify, by name and address, each person or entity to whom Mr. Yu migrated,

17  shared or provided a copy of Plaintiffs' Confidential Assets, and a detailed description of the

18  specific information or data that he shared or provided to any such person or entity; (8)

19  requiring that Mr. Yu isolate and retain any and all electronic, hard copy, or other files and/or

20  copies or paper files of Plaintiffs' Confidential Assets or any data derived therefrom, in his

21  possession, custody and control, pending further order of this Court; (9) requiring that Mr. Yu

22  make each one of his electronic devices—capable of storing or replicating any of Plaintiffs'

23  Confidential Assets—and his third-party electronic accounts for storing information[3] available

24  for an independent forensic examination to ensure that such assets are identifiable for

25  prospective repossession by Plaintiffs and/or verifiable destruction; and (10) requiring Mr. Yu

26  to notify and provide the requisite information to the service providers of his electronic accounts

27  to preserve the evidentiary information existing therein.

28  [3] Plaintiffs reasonably believe that Mr. Yu maintained accounts with at least Google, Dropbox, GitHub and GitLab.

**B.    PLAINTIFFS AND THEIR PROPRIETARY AND VALUABLE BUSINESS MODEL.**

Plaintiffs are investment firms and algorithmic trading companies having principal places of business located in Incline Village, Nevada, which engage in trading, investment and other business activities on a global basis. Shi Decl., at ¶ 3. Both entities have developed trading and business strategies, real-time reporting, post-trade analysis, and technologies that are built on unique trading algorithms, mathematical models, predictive signals, computer code, infrastructure design, and other proprietary information and data. *Id.*

Plaintiffs' technology and trading strategies are substantially built on the proprietary trading automation created by Plaintiffs, which provides the highest-speed processing of a huge amount of market information and instantaneous reaction to market changes. *Id.*, at ¶ 6. This and Plaintiffs' other trade secrets and proprietary/confidential information and data has given Plaintiffs an advantage in predicting future prices and executing profitable trades at the highest speeds. *Id.* Such business advantages and strategies are highly valuable to Plaintiffs. *Id.*

Critically, to maintain competitive superiority Plaintiffs must retain the confidentiality of their proprietary trading strategies and technologies. *Id.*, at ¶ 9. Uncontrolled leaking or unfettered dissemination of Plaintiffs' Confidential Assets is certain to cause Plaintiffs grave and irreparable harm. *Id.* To prevent such unfettered use and dissemination, Plaintiffs employ strict measures to keep their proprietary information and data confidential. *Id.*, at ¶ 10. All employees must agree to stringent confidentiality covenants as a condition of their employment, which expectations are set forth in executed contracts and reiterated annually with each employee. *Id.* Moreover, Plaintiffs engage in substantial measures to ensure that each employee is aware of and bound by internal compliance manuals and communications policies that restrict access to and the use of Plaintiffs' trade secrets and proprietary/confidential information and data. *Id.* Plaintiffs specify and identify information, data and materials as "Confidential" or "Restricted". *Id.* Further, access to Plaintiffs' databases is controlled via log-in requirements and command codes, segregated servers and files, and controlled group access restrictions. *Id.* In addition, Plaintiffs password-protect their computer systems and keep hard copies under lock and key, and use role-based Access Control Lists to limit access to data and resources. *Id.*

### C.   DEFENDANT'S BUSINESS RELATIONSHIP WITH PLAINTIFFS.

Mr. Yu began working for Zitan in or around May 4, 2015 as a Quantitative Researcher. Shi Decl., at ¶ 11. Under the terms of his employment, Mr. Yu agreed to comply with all of Plaintiffs' policies and procedures. *See* Zitan Employment Agreement, at p. 2.[4] *Id.* Mr. Yu also agreed to protect Zitan's proprietary and confidential business information and entered into the Zitan Confidentiality Agreement on April 28, 2015.[5] Shi Decl., at ¶ 12. Pursuant to the Zitan Confidentiality Agreement, Mr. Yu agreed not to use Zitan's "Confidential Information" for his own benefit or the benefit of any person or entity other than Zitan, not to disclose Zitan's "Confidential Information" to any third party, and to return all records, materials, property, documents, and data relating to Zitan's business upon termination of his employment. *Id.* On November 21, 2015, Mr. Yu acknowledged and agreed to the terms of the Data Policy, and on September 19, 2016 Mr. Yu acknowledged and agreed to the terms of the Communication Policy.[6] *Id.*, at ¶¶ 16, 18. Under the Data Policy, Mr. Yu agreed, among other things, to use only Plaintiffs-issued laptops and devices to connect to the Plaintiffs' servers or data center locations; not to move any of Plaintiffs' Source Code or trading data from the Plaintiffs' servers or from data centers onto his personal laptop; and not to remotely access Plaintiffs' data location centers from personal devices without written authorization. *Id.* at ¶ 17.

Under the Zitan Confidentiality Agreement, Mr. Yu also agreed to a duty of loyalty: to faithfully and diligently perform the duties assigned to him, to act in the Company's interests at all times, and to abide by all of the Company's policies and procedures as well as applicable federal, state, local and foreign laws, regulations, and ordinances. *Id.* at ¶ 19.

### D.   MISAPPROPRIATION AND DELETION OF PLAINTIFFS' CONFIDENTIAL ASSETS.

On April 9, 2018, Mr. Yu resigned his employment with Zitan. Zitan and Mr. Yu thereupon signed the Termination Letter, in which Mr. Yu acknowledged that he remains bound

---

[4] *See* Ex. B to Plaintiffs' Motion to File Under Seal (Dkt. No. 7).

[5] *See* Ex. A to Plaintiffs' Motion to File Under Seal (Dkt. No. 7). The Zitan Confidentiality Agreement defined "Confidential Information" to include information not generally known to those outside of Zitan relating to, among other things, its business, techniques, programs and programming code, software programs, models, trades, operations, performance, and investment strategies and plans.

[6] *See* Exs. C and D to Plaintiffs' Motion to File Under Seal (Dkt. No. 7).

13119-01/2087222.docx

by all of the obligations that he agreed to with the Zitan that survived termination of his employment, including his obligations to maintain the confidentiality of confidential information as set forth in the Zitan Confidentiality Agreement.[7] Mr. Yu further acknowledged that he had returned all property, both physical and electronic, as outlined in the Zitan Confidentiality Agreement. *See* Ex. A to Plaintiffs' Motion to File Under Seal (Dkt. No. 7), at Section 2. "Return of Confidential Information"; *see also*, Shi Decl., at ¶ 20.

Shortly thereafter, Mr. Yu posed questions relating to his non-compete obligations (which Plaintiffs' invoked to encompass a 12-month period), including about the proper scope of the restricted area relating to his non-compete. *Id.*, at ¶ 21. These questions gave rise to concerns that Mr. Yu might try to avoid his obligations. *Id.* More egregiously, Plaintiffs discovered that just prior to giving notice, Mr. Yu had downloaded a large number of Plaintiffs' Confidential Assets from Plaintiffs' cloud-based accounts, that Mr. Yu deleted at least 26 electronic files from Evernote, that Mr. Yu deleted numerous crucially essential source code and data files, and that Mr. Yu then deleted the command history of his work computer in a deliberate effort to cover his tracks. *Id.*, at ¶¶ 22, 24, 25, 29, 30.

Upon uncovering these facts, on May 3, 2018, Plaintiffs, through counsel, directed a letter to Mr. Yu to: (1) inform him that his employment with Zitan was retroactively terminated for cause; (2) demand that he immediately return all Company information; (3) demand that he turn over to a forensic vendor to be chosen by Zitan, all of his personal electronic devices capable of storing any information and disclose to such vendor his usernames and passwords to all third-party electronic storage facilities to permit inspection; and (4) demand that to the extent that Mr. Yu did not immediately return all Plaintiffs' information, Mr. Yu preserve all potentially relevant electronically stored information, documents, data and metadata, including his personal devices. *See* Cary Decl., at ¶ 3.

Following this communication, Plaintiffs sent an image digitally reconstructing the hard drive of Mr. Yu's work computer to a forensic consultant, T&M Protection Resources, LLC ("T&M"), retained by Plaintiffs' attorneys to conduct a comprehensive forensic review. *See* Shi

---

[7] *See* Ex. E to Plaintiffs' Motion to File Under Seal (Dkt. No. 7).

Decl., at ¶¶ 22, 23; Ragona Decl., at ¶¶ 3-10. Plaintiffs' findings, as well as those of T&M, were staggering: Mr. Yu had improperly downloaded a total of some 114 files from Zitan's Dropbox account, most of which he downloaded on March 23, 2018 (during Mr. Yu's last full month of employment) to what appeared and was later confirmed to be his personal computer.[8] Ragona Decl., at ¶¶ 11-22. Plaintiffs and T&M also found that on March 23, 2018, the very same day that Mr. Yu had downloaded the majority of files [66] from Zitan's Dropbox account to his personal computer and, potentially, to other devices, Mr. Yu had also deleted some 26 files from another of Zitan's cloud-based accounts. *Id.*, at ¶¶ 23-26.  Plaintiffs' subsequently learned that Mr. Yu had intentionally deleted and sabotaged other files, information and data relating to matters on which he was engaged.  Shi Decl, at ¶ 29.

In an effort to address Mr. Yu's wrongdoing, Plaintiffs' attorneys engaged in communications with Mr. Yu's counsel to determine if, among other things, Mr. Yu would agree to turn over his personal electronic devices to be forensically imaged and analyzed. *See* Cary Decl., at ¶ 6. These discussions ultimately led to the discovery that Mr. Yu tried to cover-up his wrongdoing. In a letter dated May 23, 2018 Mr. Yu's counsel confirmed that Mr. Yu had downloaded files from Zitan's Dropbox account to his personal computer. *Id.*, at ¶ 5. In this same letter, Mr. Yu's counsel further divulged that following receipt of Plaintiffs' May 3, 2018 letter instructing Mr. Yu to preserve all documents, electronically stored information, data and metadata, Mr. Yu had instead "destroyed and discarded his personal laptop's hard drive." *Id.*

Despite this admitted intentional destruction of evidence, counsel for both sides continued to discuss a potential protocol relating to, among other things, the forensic examination of Mr. Yu's devices and accounts. *Id.*, at ¶ 6. Ultimately, after a change of counsel, Mr. Yu's new counsel confirmed, in a letter dated July 16, 2018, that Mr. Yu had "deleted or destroyed" the files that he downloaded on March 23, 2018, and that he had no interest in engaging in further negotiations with Plaintiffs. *Id.*, at ¶ 8. Accordingly, Plaintiffs have no choice but to now seek injunctive relief from this Court.

---

[8] A thorough chart of the Plaintiffs' Confidential Assets wrongfully appropriated by Defendant from Dropbox is attached hereto as **Exhibit F**.

## III.   MEMORANDUM OF POINTS AND AUTHORITIES

### A.   TEMPORARY INJUNCTIVE RELIEF IS WARRANTED.

Plaintiffs are entitled to immediate injunctive relief pursuant to the express terms and conditions of the Zitan Confidentiality Agreement and related agreements. Plaintiffs are further entitled to such relief pursuant to the provisions of 18 U.S.C. § 1836(b)(3), NRS § 600A.040, and express terms of the agreements executed by Mr. Yu.

Pursuant to the DTSA and the UTSA, this Court may enjoin any "actual or threatened misappropriation" and, in appropriate circumstances (such as this case), take "affirmative acts to protect a trade secret." 18 U.S.C. § 1836(a)(3); NRS § 600A.040. Moreover, under federal and Nevada jurisprudence, issuance of immediate temporary injunctive relief in a matter such as this is both warranted and encouraged:

> [Injunction motions] are frequently and commonly permitted under the Nevada law and practice. They are frequently permissible in procedural matters, and also in situations and under circumstances of emergency, as in the case of an application for an injunction to prevent irreparable injury which would result from delay, and where there is no plain, speedy and adequate remedy at law.

*Dangberg Holdings Nevada, LLC v. Douglas County*, 115 Nev. 129, 146, 978 P.2d 311, 321 (Nev. 1999) (citation omitted); *see also*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 376 (2008) (injunctions are extraordinary remedies, never awarded as of right, but based on a balance of competing claims of injury and the effect on each party of awarding or denying the requested injunction). As this Court has well-stated, unique and non-duplicable intellectual property assets such as Plaintiffs' Confidential Assets are highly sensitive and worthy of protection through injunctive relief.

> Public disclosure of a trade secret destroys the information's status as a trade secret. This harms the trade secret owner by both depriving him of a property interest . . . and by allowing his competitors to reproduce his work without an equivalent investment of time and money. Disclosure of non-trade secret confidential information is similarly recognized as a serious harm.

*Saini v. Int'l Game Technology*, 434 F.Supp.2d 913, 919 (D. Nev. 2006) (citations omitted).[9]

---

[9] The *Saini* decision is particularly illustrative in the instant matter. Therein, the Court concluded that the plaintiff had misappropriated and delivered confidential documents—including trade secrets and non-trade secret proprietary information—to a third party. *Saini*, 434 F.Supp.2d at 923. The Court then issued a preliminary injunction enjoining

As Plaintiffs explain below, this is precisely the significant harm that exists in this action. Should Mr. Yu be permitted to continue his possession—and ability to use, disseminate and/or exploit—Plaintiffs' Confidential Assets, and further be permitted to destroy evidence of his misappropriation and wrongdoing, Plaintiffs will continue to suffer immediate, irreparable injury, loss and damage absent the entry of injunctive relief. Substantial portions of Plaintiffs' business are at considerable risk as Mr. Yu possesses—and likely uses, disseminates, and/or exploits—the misappropriated Plaintiffs' Confidential Assets for the benefit of himself and/or third parties. These are precisely the types of harms that the injunctive relief contemplated by the DTSA and UTSA, as well as that addressed by Plaintiff's contractual agreements, is intended to enjoin.

Plaintiffs are likely to succeed on the merits for each of their primary claims for relief and Plaintiffs will suffer considerable irreparable harm unless Mr. Yu is enjoined from engaging in further wrongful acts related to those claims.[10] Moreover, serious questions that go to the merits of these claims exist, and the balance of hardships absent entry of temporary and preliminary injunctive relief tips sharply in favor of Plaintiffs. As such, the level of irreparable and immediate harm that Plaintiffs will suffer, coupled with a considerable tilt of the balance of

————————————————— (continued)

defendant from disclosing confidential information to third parties and ordering plaintiff to return to defendant any confidential and proprietary information that plaintiff obtained from defendant. *Id.* at 925. Although the possibility of Mr. Yu's delivery of Plaintiffs' Confidential Assets to third parties is not as clear-cut as in the *Saini* case, the core factual similarities between *Saini* and the instant action are otherwise substantial, and this Court can draw considerable guidance from *Saini* in determining that Plaintiffs are likewise entitled to the requested temporary and preliminary injunctive relief against Mr. Yu.

[10] Plaintiffs brief only the issues of likelihood of success on the merits on their claims under the DTSA and the UTSA, and for breach of contract. Without waiving their rights to do so in supplement to the instant Motion for TRO/PI, Plaintiffs have not briefed the issues of likelihood of success on the merits on their claims for violations of the Consumer Fraud and Abuse Act, misappropriation of confidential and proprietary information, and breach of the covenant of good faith and fair dealing. Plaintiffs hereby reserve the right to augment this Motion for TRO/PI with regard to the likelihood of success on the merits as to these alternative claims for relief.

Plaintiffs are also cognizant that NRS § 600A.090 generally "displaces conflicting tort, restitutionary, and other law of [Nevada] providing civil remedies for misappropriation of a trade secret", and that the Nevada Supreme Court has interpreted this provision to preclude various common law claims. *See Frantz v. Johnson*, 116 Nev. 455, 465, 999 F.2d 351, 357-58 (2000) (referencing *Hutchison v. KFC Corp.*, 809 F.Supp. 68, 70 (D. Nev. 1992)). Nevertheless, the Nevada Supreme Court expressly concluded that common law claims such as those alleged by Plaintiffs in this action are not entirely precluded by the UTSA, stating "the UTSA [does not] provide a blanket preemption to all claims that arise from a factual circumstance possibly involving a trade secret. There may be . . . instances where a plaintiff will be able to assert tort claims . . . that do not depend on the information at issue being deemed a trade secret, and thus are not precluded by the UTSA." *Id.* at 465 n. 3, 999 F.2d at 358 n. 3 (citation omitted). Likewise, the DTSA does not supplant the UTSA or other state common law. *See* 18 U.S.C. § 1836(b)(1).

13119-01/2087222.docx

hardships in favor of Plaintiffs, justifies entry of a temporary restraining order and preliminary injunction in favor of Plaintiffs on both statutory and contractual allowances.

**B.    THE STANDARD FOR OBTAINING A PRELIMINARY INJUNCTION.**

Plaintiffs bear the burden of demonstrating that preliminary injunctive relief is warranted. In the Ninth Circuit, whether injunctive relief should issue[11] requires that a plaintiff demonstrate: (1) a strong likelihood of success on the merits; (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted; (3) that the balance of equities favors the plaintiff; and (4) that issuance of an injunction is in the public interest. *Adidas America, Inc., et al. v. Skechers USA, Inc.*, 800 F.3d 747, 753 (9th Cir. 2018). This test tracks to Nevada's state-law jurisprudence, whereby injunctive relief is available if: (1) the party seeking such relief enjoys a reasonable likelihood of success on the merits; and (2) the party's conduct to be enjoined, if permitted to continue, will result in irreparable harm for which compensatory damages are an inadequate remedy. *Sobel v. Capital Management Consultants, Inc.*, 102 Nev. 444, 446, 726 P.2d P.2d 335, 337 (1986); *Dixon v. Thatcher*, 103 Nev. 414, 415, 742 P.2d 1029 (1987). Moreover, under state law the court may also consider two additional factors: (1) the relative interests of the parties—*i.e.*, how much damage the plaintiff will suffer if injunctive relief is denied versus the hardship to the defendant if injunctive relief is granted; and (2) the interest the public may have in the litigation, if any. *Ellis v. McDaniel*, 95 Nev. 455, 459, 596 P.2d 222, 225 (1979). In this matter, all of the factors under federal and state jurisprudence weigh in favor of granting Plaintiffs' request for injunctive relief.

**C.    PLAINTIFFS CAN MEET THEIR BURDEN FOR OBTAINING INJUNCTIVE RELIEF.**

**1.    Likelihood of Success on the Merits of the Primary Claims for Relief.**

Plaintiffs are likely to succeed on the merits of their primary claims for relief, thereby satisfying the first element for obtaining injunctive relief.[12]

---

[11] The standard for obtaining a temporary restraining order is the same as that for obtaining a preliminary injunction. *Garcia v. Nevada Bd. of Prison Commissioners*, 2007 WL 465307, *3 (D. Nev. Feb. 8, 2007) (citation omitted).

[12] Plaintiffs need not show probability of success on each cause of action in order to be entitled to the relief requested herein; rather, Plaintiffs need only show a likelihood of success on only one such cause. Nevertheless, as set forth *infra*, Plaintiffs can meet their burden for each of their primary claims for relief, and therefore this Court should grant Plaintiffs' request for injunctive relief herein.

13119-01/2087222.docx

a. <u>Likely Success On the Claims of Misappropriating Trade Secrets.</u>

Foremost, Plaintiffs are likely to succeed on their misappropriation of trade secrets claim under the DTSA and/or UTSA. To establish the claim of misappropriation of trade secrets under both federal and state law, Plaintiffs must show: (a) the existence of a valuable trade secret; (b) misappropriation of the trade secret through acquisition, use, disclosure, or nondisclosure of use of the trade secret; and (c) proof that the misappropriation is wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose. *Frantz v. Johnson*, 116 Nev. at 466, 999 F.2d at 358; *see also*, 18 U.S.C. §§ 1836 and 1839(5). Plaintiffs are likely to succeed on each of these elements.

i. <u>Plaintiffs' Confidential Assets Are Trade Secrets.</u>

Initially, Plaintiffs' Confidential Assets are trade secrets subject to protection under the DTSA and UTSA. The DTSA defines the term "trade secret" as:

> [A]ll forms and types of financial, business, scientific, technical economic or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized, physically, electronically, graphically, photographically, or in writing if—
>  (a) the owner thereof has taken reasonable measures to keep such information secret; and
>  (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). The definition of "trade secret" under the UTSA is substantially the same.[13]

In effect, a trade secret is information "[that] is secret and which is not generally available to the public, and which gives one who uses it an advantage over competitors who do not know of or use the trade secret." *Religious Tech. Center v. Wollersheim*, 796 F.2d 1076,

---

[13] Information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. NRS § 600A.030(5).

13119-01/2087222.docx

1091 (9th Cir. 1986) (citing *People v. Serrata*, 133 Cal. Rptr. 144, 152 (Cal. Ct. App. 1976) (applying California's statutory enactment of the UTSA, which mirrors the UTSA as adopted in Nevada)). Thus, although the owner of the trade secret does not have to be the only one in the market, information is a trade secret "if an outsider would obtain a valuable share of the market by gaining certain information, [when] that information . . . is not known or readily ascertainable." *Id.* (citation omitted).

Plaintiffs' Confidential Assets clearly fit within the definition of a "trade secret" under both the DTSA and UTSA. Plaintiffs' Confidential Assets—their confidential and proprietary information and data, including formulaic and algorithmic investment models and strategies, and the detailed business files, notes and documents related thereto—unquestionably constitute financial, business, scientific, technical economic or engineering information, including formulas, patterns, compilations, program devices, methods, techniques, product, systems, processes, designs, prototypes, procedures, computer programming instructions or code.

Thus, there can be no debate over the point that Plaintiffs' Confidential Assets have and continue to provide Plaintiffs with an advantage over competitors that do not have such assets at their disposal. The very crux of Plaintiffs' business model is based on these assets. Shi Decl., at ¶¶ 6-9. Furthermore, there can also be little debate over the point that Plaintiffs' Confidential Assets are not known or generally ascertainable by the public or others not having direct access to such proprietary and confidential information and data. That is, each of these assets is an amalgam of Plaintiffs' business activities and strategies; Mr. Yu could not have independently developed any such amalgam, particularly in any rapid or efficient manner, absent access to Plaintiffs' Confidential Assets. Mr. Yu simply misappropriated these assets for his own illegitimate benefit—which is the hallmark of the DTSA's and UTSA's protective purposes.

ii.    Derivation of Independent Economic Value.

Further, Plaintiffs' Confidential Assets derive independent economic value from not being generally known to or readily ascertainable by proper means by the public or any other person. *See* Shi Decl., at ¶ 7. That is, these assets "convey an actual or potential commercial advantage . . . measurable in dollar terms." *Religious Tech. Center*, 796 F.2d at 1090.

As set forth above, Plaintiffs' Confidential Assets are an amalgam of the business efforts and development made by Plaintiffs. All such business information and data reflect Plaintiffs' business model and strategies, and the profit, revenue and income sources inherent to Plaintiffs through this model and strategies. *See* Shi Decl., at ¶¶ 7, 8. Absent Plaintiffs' business efforts and development, no such assets would exist in the form or databases created by Plaintiffs; that is, although the information and data constituting such assets may exist in some ethereal, unorganized state, *it is only through the extensive business efforts and strategies of Plaintiffs that such assets have come to constitute Plaintiffs' confidential business information and data.* As such, the economic foundation of Plaintiffs is anchored in Plaintiffs' Confidential Assets, which is the inherent value to such assets. *Id.*, at ¶ 6.

In short, Plaintiffs' Confidential Assets are invaluable to Plaintiffs, and Mr. Yu gains an enormous and unfair advantage by possessing—and certainly by using, disclosing, disseminating and/or exploiting—these assets. Mr. Yu has placed Plaintiffs at great risk of suffering considerable business disadvantages as a direct and proximate result of his wrongful possession—and likely use, disclosure, dissemination and/or exploitation—of Plaintiffs' Confidential Assets, and Plaintiffs will continue to suffer such disadvantages if Mr. Yu is not enjoined from such wrongful conduct regarding these assets. *Id.*, at ¶¶ 9, 26.

   iii. <u>Reasonable Steps Protect Plaintiffs' Confidential Assets.</u>

Plaintiffs have also taken multiple reasonable steps to protect Plaintiffs' Confidential Assets from disclosure under the circumstances. Under the DTSA and UTSA, the owner of the trade secret must take reasonable precautions against disclosure or access. These measures should be designed to prevent the disclosure of or access to confidential and proprietary information. *Buffets, Inc. v. Klinke*, 73 F.3d 965, 969 (9th Cir. 1996) (citing *Machen Inc. v. Aircraft Design, Inc.*, 828 P.2d 73 (Wash. Ct. App. 1992)). In determining whether the measures taken were adequate, courts look at such factors as "advising employees of the existence of a trade secret, limiting access to a trade secret on a 'need to know basis,' and controlling . . . access." *Id.* Under the DTSA and UTSA, Plaintiffs are entitled to a presumption of a reasonable effort to maintain the secrecy of assets designated "private" or "confidential", or where

Plaintiffs have made "other indications of secrecy" in regard to the trade secret information. *See* NRS § 600A.032; *see also Prot. Techs., Inc. v. Ribler*, No. 317CV00144LRHWGC, 2017 WL 923912, at *2 (D. Nev. Mar. 8, 2017) (confidentiality agreements and limiting access to the data to password-protected entry points constituted "reasonable efforts" to secure trade secrets under both the DTSA and UTSA).

Here, Plaintiffs have undertaken multiple steps to maintain the confidentiality of their trade secrets and proprietary information and data, including: (1) all employees must agree to stringent confidentiality covenants as a condition of their employment, which agreements are set forth in executed agreements and reiterated on an annual basis with each employee; (2) each employee is aware of and bound by internal compliance manuals and communications policies that restrict access and the use of Plaintiffs' trade secrets and proprietary/confidential information and data; (3) access to Plaintiffs' databases is controlled through log-in requirements and command codes, segregated servers and files, and controlled group access restrictions; (4) Plaintiffs specify and identify information, data and materials as "Confidential" or "Restricted"; and (4) Plaintiffs password-protect their computer systems and keep hard copies under lock and key, and use role-based Access Control Lists to limit access to data and resources. *See* Shi Decl., at ¶ 10. Mr. Yu was fully aware of each of these protective measures deployed by Plaintiffs insofar as Mr. Yu executed every one of the very policies on which Plaintiffs relied to protect their trade secrets and proprietary information, and Mr. Yu was fully versed as to each such protective measure within each such policy.

Thus, it is readily apparent that Plaintiffs have taken sufficient reasonable precautions to protect Plaintiffs' Confidential Assets from disclosure and maintain Plaintiffs' Confidential Assets as trade secrets. This is particularly so given the express restrictions, limitations, and definitions of confidentiality and trade secrecy attributed to these assets expressly set forth in the terms and conditions of the Zitan Confidentiality Agreement, Data Policy, Communication Policy, and Termination Letter. Plaintiffs are therefore entitled to the presumption that they have made reasonable efforts to maintain the secrecy of Plaintiffs' Confidential Assets as trade secrets pursuant to the DTSA and UTSA.

13119-01/2087222.docx

iv.    Defendant Has Misappropriated Plaintiffs' Trade Secrets.

Both the DTSA and UTSA define "misappropriation" as "*acquisition* of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. *See* 18 U.S.C. § 1839(5)(A); NRS § 600A.030. Thus, the DTSA and UTSA "contemplate three theories of liability: (1) acquisition, (2) disclosure, *or* (3) use." *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-cv-2177 (SI), 2017 WL 1436044, at *4 (N.D. Cal. Apr. 24, 2017) (emphasis added); *accord Physician's Surrogacy, Inc. v. German*, No. 17-cv-718 (MMA) (WVG), 2017 WL 3622329, at *8 (S.D. Cal. Aug. 23, 2017); *see also AUA Private Equity Partners, LLC v. Soto*, No. 1:17-CV-8035-GHW, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018). The appropriation of a trade secret is wrongful where the acquisition or disclosure is without authority or is expressly or impliedly prohibited by contract or a duty prohibiting the same. *See* 18 U.S.C. 1839(6); § NRS § 600A.030(2); *Frantz v. Johnson*, 116 Nev. at 466, 999 P.2d at 358.

Although neither the DTSA or UTSA define the term "acquisition," courts have consistently found misappropriation through improper acquisition under nearly identical circumstances as those presented in this action: namely, where the defendant copies the employer's computer files prior to resignation. *See e.g.*, *RKI, Inc. v. Grimes*, 177 F.Supp.2d 859, 875 (N.D. Ill. 2001) (during employment, employee "downloaded, copied, or otherwise transmitted" the trade secrets "for purposes other than serving the interests of" his employer); *see also*, *AUA Private Equity Partners, LLC v. Soto*, No. 1:17-CV-8035-GHW, 2018 WL 1684339, at *6 (S.D.N.Y. Apr. 5, 2018) (allegations employee copied trade secrets from work laptop to personal cloud-based storage without permission constitutes misappropriation through acquisition); *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 313–15, 849 A.2d 451 (2004) (misappropriation by "improper means" exists where employee copied his employer's computer files to a CD for personal use before resigning). Courts have also held an employee's "spoliation of evidence on [his] computer support[ed] a negative inference that [he] destroyed evidence of misappropriation." *See RKI, Inc.* 177 F.Supp.2d at 877; *Liebert Corp. v. Mazur*, 827

N.E.2d 909, 926-27 (Ill. App. Ct. 2005) (finding acquisition by improper means when employee downloaded trade secrets onto his laptop in violation of a confidentiality policy hours before resigning and then "attempted to destroy any indication of his downloading activities").

In this case, Mr. Yu unquestionably misappropriated Plaintiffs' Confidential Assets through—at minimum—his improper acquisition of such assets. As mentioned above, in violation of the Zitan Confidentiality Agreement, Mr. Yu, by his own admission, downloaded files from Zitan's Dropbox account to his personal computer. *See* Cary Decl., at ¶ 5. Mr. Yu further admitted that, following receipt of Plaintiffs' May 3, 2018 letter instructing him to preserve all documents, electronically stored information, data and metadata, he instead "destroyed and discarded his personal laptop's hard drive." *Id.* Mr. Yu then refused to respond to Plaintiffs' requests to try and resolve this matter without judicial intervention. Moreover, Mr. Yu's attempts to cover his wrongful actions through the intentional destruction of his hard drive and his issuance of commands to delete certain electronic files used by Source Code that Mr. Yu had created and his deliberate deletion of the command history in an effort to cover his tracks, plainly demonstrate a negative inference that Mr. Yu misappropriated Plaintiffs' trade secrets and proprietary information and data, and then undertook deliberate efforts to destroy the evidence of his misappropriation. *See* Shi Decl., at ¶ 30.

Although Plaintiffs are likely to uncover further evidence supporting their claims of misappropriation, Mr. Yu's improper acquisition of Plaintiffs' Confidential Assets *alone* violates both the DTSA and UTSA, and as such, Plaintiffs are likely to succeed on these claims.

v.    Defendant's Misappropriation Breached Duties Owed to Plaintiffs.

Moreover, there is no question that Mr. Yu's misappropriation of Plaintiffs' Confidential Assets breached fundamental duties he owed to Plaintiffs. As set forth above, Mr. Yu is bound by the express terms and conditions of the Zitan Confidentiality Agreement, Data Policy, Communication Policy, and Termination Letter. These agreements unambiguously address the duties and obligations that Mr. Yu owed to Plaintiffs with regard to the existence, protection, confidentiality and non-piracy of Plaintiffs' Confidential Assets. Specifically, these agreements

prohibit Mr. Yu from, among other things, using Plaintiffs' Confidential Assets for his own benefit or the benefit of any person or entity other than Plaintiffs, disclosing Plaintiffs' Confidential Assets to any third party, and moving Plaintiffs' Confidential Assets from Plaintiffs' servers onto Mr. Yu's personal laptop, USB devices, cloud-based storage and personal email, without Plaintiffs' explicit prior approval. *See* Shi Decl., at ¶¶ 11-18.  Moreover, Mr. Yu expressly agreed to "act in the [Plaintiffs'] interests at all times, and to abide by all of the [Plaintiffs'] policies and procedures as well as applicable federal, state, local and foreign laws, regulations, and ordinances," which he has clearly not done.  *See* Shi Decl., at ¶ 11. There is simply no debate over the fact that Mr. Yu violated the express duties and obligations that he owed to Plaintiffs pursuant to the terms and conditions of these agreements by engaging in the acts of wrongful misappropriation and destruction of evidence noted above.

Thus, on all levels Plaintiffs have established a likelihood of success on the merits as to each element of their claim for violations of the DTSA and UTSA.

### b.   Likely Success On the Merits of the Claim for Breach of Contract.

Plaintiffs are also likely to succeed on their claim for breach of contract in regard to Mr. Yu's non-compliance with the express terms and conditions of the Zitan Confidentiality Agreement, Data Policy, Communication Policy, and Termination Letter. Under Nevada law, a plaintiff claiming breach of contract must prove: (a) the existence of a valid contract; (b) a breach of the contract by the defendant; and (c) damage as a result of the breach. *Saini*, 434 F.Supp.2d at 919-20 (citation omitted). Contracts are to be interpreted according to their written language and enforced as written. *Southern Trust Mortgage Co. v. K&B Door Co.*, 104 Nev. 564, 568, 763 P.2d 353, 355 (1988).

There is no debate over the validity and enforceability of the Zitan Confidentiality Agreement, Data Policy, Communication Policy, and Termination Letter. Among other material terms, Mr. Yu is expressly prohibited from using Plaintiffs' Confidential Assets for his own benefit or the benefit of any person or entity other than Plaintiffs, disclosing Plaintiffs' Confidential Assets to any third party, and moving Plaintiffs' Confidential Assets from

Plaintiffs' servers onto Mr. Yu's personal laptop, USB devices, cloud based storage and personal email, *etc.* without Plaintiffs' explicit approval. *See* Shi Decl., at ¶¶ 11-18. Further, as set forth above, these agreements contain express provisions requiring that Mr. Yu maintain and protect the confidentiality of Plaintiffs' Confidential Assets throughout and following his employment. *Id.* Such duties and obligations are unambiguous, valid and enforceable. Mr. Yu's breaches of the express terms of the Zitan Confidentiality Agreement, Data Policy, Communication Policy, and Termination Letter, by misappropriating Plaintiffs' Confidential Assets, sabotaging and destroying other of Plaintiffs' Confidential Assets, and destroying the evidence of his misconduct, are clear and unequivocal, and unquestionably have caused significant damage and irreparable harm to Plaintiffs. *Id.*, at ¶ 11.

Thus, Plaintiffs have established a likelihood of success on the merits as to each element of their claim for breach of contract.

### 2.   Plaintiffs Have Suffered and Will Continue to Suffer Irreparable Harm Absent Injunctive Relief.

As discussed above, if this Court were not to grant a temporary restraining order and preliminary injunction, there would be no objective restraint on Mr. Yu to prevent his continuing possession—and ability to use, disclose, disseminate, and/or exploit—Plaintiffs' Confidential Assets and brazen destruction of evidence of his wrongdoing to the detriment of Plaintiffs' business. Likewise, Mr. Yu's continued possession—and likely use, disclosure, dissemination and/or exploitation—of Plaintiffs' Confidential Assets and admitted destruction of evidence has already occurred, and inevitably will continue to occur if Mr. Yu is not enjoined from such wrongdoing.

Irreparable harm is that injury which is so serious that a monetary award cannot adequately compensate the injured party. Irreparable harm is typically found and/or presumed in cases of alleged trade secret misappropriation and breach of confidentiality obligations. *See e.g.*, *Norbrook Labs Ltd. v. G.C. Hanford Manufacturing Co.*, 297 F.Supp.2d 463, 492 (N.D.N.Y. 2003) (citing trade secret cases in which the court has presumed irreparable harm); *Incline Technologies, Inc. v. Pacific Medical Group, Inc.*, 1996 WL 806143 *2 (D. Nev. 1996) (noting

that the possibility of irreparable harm is all that need be shown in a trade secret case); *Millard v. Electronic Cable Specialists*, 790 F.Supp. 857, 860 (D. Minn. 1992) (finding irreparable harm in the context of breach of contractual duty of confidentiality); *DIRECTTV, Inc. v. Trone*, 209 F.R.D. 455, 459 (C.D. Cal. 2002) (treating trade secrets and confidential information comparably). "Acts committed without just cause which unreasonably interfere with a business or destroy its credit or profits, may do an irreparable injury and thus authorize issuance of an injunction." *Sobol v. Capital Management*, 102 Nev. 444, 446 (1986). Because of the inherent irreparable harm that misappropriation of trade secrets such as Plaintiffs' Confidential Assets possesses, both the DTSA and UTSA provide a statutory basis for obtaining injunctive relief. 18 U.S.C. § 1836; NRS § 600A.040. Additionally, the Zitan Confidentiality Agreement expressly provides that Zitan is entitled to temporary and preliminary injunctive relief, based upon breaches involving the misappropriation of its trade secrets and confidential information:

> Because money damages for the breach or threatened breach of [Mr. Yu's] obligations under this Agreement may be inadequate to compensate the Company fully for the harm it has suffered or will suffer, the Company may seek to obtain injunctive relief . . . or specific performance . . . or other remedies in equity . . . without being obligated to show actual damages.

Under facts strikingly similar to those at issue in this action, this Court has found that downloading company data, especially when coupled with attempts to hide such acts, indicates an intent to use the data against the company's interests sufficient to constitute irreparable harm. *Prot. Techs., Inc. v. Ribler*, 2017 WL 923912, at *2 (D. Nev. Mar. 8, 2017) (absent an injunction, defendant may disclose the data to plaintiff's competitors, granting it an unfair advantage and ultimately leading to a loss of revenue). This Court has also recognized that "[t]he financial services industry is highly competitive" and erosion of a plaintiff's "competitive advantage constitutes the irreparable harm necessary to justify issuance of an injunction." *See United Capital Fin. Advisers, Inc. v. Capital Insight Partners*, LLC, 2012 WL 1079329, at *3 (D. Nev. Mar. 30, 2012) (citation omitted).

Herein, absent entry of injunctive relief, Plaintiffs will plainly suffer ongoing irreparable injury resulting in the loss of its business advantages. *See* Shi Decl., at ¶ 26. Mr. Yu has

interfered with Plaintiffs' business operations by misappropriating Plaintiffs' Confidential Assets, engaging in the destruction and sabotage of others of Plaintiffs' proprietary assets, and deliberately destroyed evidence of his wrongdoing. Allowing Mr. Yu to continue such misconduct pending resolution on the merits of Plaintiffs' Complaint will necessarily result in continuing and ongoing irreparable damage to Plaintiffs.

### 3.     The Relative Interests of the Parties Favors Plaintiffs.

Courts have acknowledged that plaintiffs in trade secret cases often face a difficult task because "misappropriation and misuse can rarely be proved by convincing direct evidence," but in "most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place." *Greenberg v. Croydon Plastics Co.*, 378 F. Supp. 806, 814 (E.D. Penn. 1974). This permissive standard is more than satisfied by the powerful *direct evidence* of Mr. Yu's misappropriation in this action.

"An employee's mere ability to take advantage of the employer's confidential information and thereby gain an unfair advantage may be sufficient for equity to restrain the employee from engaging in a competing business." *Nike, Inc. v. McCarthy*, 379 F.3d 576, 586 (9th Cir. 2004). Further, a "preliminary injunction maintaining the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted." *Dangberg Holdings*, 115 Nev. at 146, 978 P.2d at 321.

Equity favors granting a temporary restraining order and preliminary injunction in this action because it places Mr. Yu "in the position [he] would have occupied if the breach of confidence had not occurred [...]." *Winston Research Corp. v. Minnesota Mining & Mfg.*, 350 F.2d 134, 142 (9th Cir. 1965). Mr. Yu will not suffer any undue hardship as a result of a temporary restraining order or preliminary injunction, as the injunctive relief sought by Plaintiffs simply enjoins Mr. Yu from possessing—or prospectively using, disclosing, disseminating and/or exploiting—confidential and proprietary assets that belong entirely to

1  Plaintiffs. Such injunctive relief will preserve the status quo pending resolution on the merits.

2  By contrast, Mr. Yu's actions jeopardize the existence of Plaintiffs' business. Absent

3  injunctive relief, Mr. Yu will continue to be able to possess—and likely make unfettered use,

4  disclosure, dissemination and/or exploitation—of Plaintiffs' Confidential Assets, all the while

5  risking an undermining of Plaintiffs' business models. Such actions by Mr. Yu cause irreparable

6  harm to Plaintiffs. Without injunctive prohibitions, Mr. Yu simply retains the opportunity to

7  further wrongfully possess Plaintiffs' trade secrets and to continue his wrongful activities

8  without interruption, which this Court should not countenance. The balance of interests of the

9  parties therefore unquestionably tilts in favor of Plaintiffs.

10  **4.   The Public Interest Favors Plaintiffs.**

11  Adoption of the DTSA and USTA by Congress and the Nevada Assembly respectively,

12  shows there is a strong public interest in protecting trade secrets. *Prot. Techs., Inc. v. Ribler*,

13  No. 317CV00144LRHWGC, 2017 WL 923912, at *3 (D. Nev. Mar. 8, 2017). There can be

14  little debate over whether the purpose of each of these laws is served by providing Plaintiffs

15  with injunctive protection over Plaintiffs' Confidential Assets. Such is the very reason that each

16  statute provides this Court with the authority to grant injunctive relief. On this basis alone, the

17  public interest favors Plaintiffs.

18  **D.   GROUNDS FOR AN ORDER FOR SEIZURE OF DEFENDANT'S DEVICES.**

19  Under the DTSA and UTSA, in appropriate circumstances where there is actual or

20  threatened misappropriation, a "court may order affirmative acts to protect a trade secret." 18

21  U.S.C. § 1836(b)(2); NRS § 600A.040(3). The statutes further provide that, in the interest of

22  preserving secrecy, a court *shall* take reasonable steps to maintain secrecy, such as "ordering a

23  person who obtains knowledge of the trade secret to return to the owner of the trade secret any

24  [material] which reflects or contains the trade secret." 18 U.S.C. 1836(b)(3); NRS §

25  600A.070(6) (emphasis added).

26  As set forth above, Mr. Yu is in possession of electronic devices through which

27  Plaintiffs' Confidential Assets may be stored, and as such these devices are fully capable of

28  being used to further possess—and likely use, disclose, disseminate and/or exploit—Plaintiffs'

- 22 -

Confidential Assets. These devices are the very form of property the DTSA and UTSA permits this Court to order seized. Furthermore, where spoliation is either occurring or at risk of occurring—such as Mr. Yu has admitted has occurred herein—it creates an appropriate circumstance in which the Court should take the affirmative step of issuing an order seizing Mr. Yu's electronic storage devices and computers. Such a seizure is an appropriate remedy where there is a danger of disclosure or destruction of confidential information. *See e.g.*, *U.S. v. Fei Ye*, 436 F.3d 1117 (9th Cir. 2006) (various materials from defendants' personal luggage, homes, and offices seized (without notice) when defendants allegedly stole trade secrets from technology companies); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1091 (9th Cir. 1989) (finding *ex parte* order for seizure of the programs in the possession of defendant that had allegedly misappropriated the owner's trade secrets appropriate); *Schalk v. State*, 823 S.W.2d 633, 635 (Tex. Crim. App. 1991) (finding computer programs and tapes containing the trade secrets were appropriately seized from the defendants' offices).

Accordingly, Plaintiffs respectfully request that this Court issue an order for seizure of Mr. Yu's electronic storage devices and computers for preservation and inspection, pursuant to 18 U.S.C. § 1836 and NRS § 600A.070. Without issuance of a seizure order, Mr. Yu will simply abscond with Plaintiffs' Confidential Assets or will simply spoliate and destroy such assets by deleting or eliminating any evidence of his misappropriation (an effort which Mr. Yu has admitted to taking (*see* Cary Decl., at ¶ 5)). A seizure order is the only way to definitively stop further misappropriation of Plaintiffs' trade secrets by Mr. Yu and ensure the preservation of relevant evidence (including by a lock-down of Mr. Yu's third-party electronic accounts for storing information (*e.g.*, email account(s), Google drive, Dropbox, GitHub, and GitLab).

### E.   INJUNCTIVE RELIEF SHOULD ISSUE UPON NO OR NOMINAL SECURITY.

Plaintiffs respectfully request that no or nominal security should be required in the instant matter under Fed. R. Civ. P. 65(c).

As a threshold matter, and as noted above, the Zitan Confidentiality Agreement expressly states that Zitan may obtain injunctive relief without the posting of a security bond. *See* Shi Decl., at ¶ 15. Furthermore, through their request for injunctive relief, Plaintiffs seek

only to enjoin Mr. Yu from any further possession—or prospective uses, disclosures, dissemination and/or exploitations—of Plaintiffs' Confidential Assets. Plaintiffs have limited their sought-after relief only to preventing—through temporary and preliminary injunctive relief—further harm to Plaintiffs through Mr. Yu's wrongful uses and exploitation of Plaintiffs' Confidential Assets. Hence, Mr. Yu will suffer *no damages* by way of the injunctive relief sought by Plaintiffs. Rather, Mr. Yu will simply be bound to do that which he is already legally bound to do. Absent any potential harm, therefore, no security should be required under Rule 65(c). Alternatively, this Court should only require Plaintiffs to post minimal security.

## IV.    CONCLUSION

Based on the foregoing points and authorities, Plaintiffs have shown a likelihood of success on the merits as to their causes of action against Mr. Yu for trade secret misappropriation in violation of the DTSA and UTSA, and breach of contract. The balance of hardships tips in favor of Plaintiffs; the relative interests of the parties favor Plaintiffs; and the public interest favors Plaintiffs. Accordingly, Plaintiffs respectfully request that this Court grant a temporary restraining order and preliminary injunction pending final adjudication of this action, and enter the proposed orders submitted herewith.

DATED this 24th day of August, 2018.

**HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON**


*/s/ James D. Boyle*

BRIAN W. BOSCHEE, ESQ. (NBN 07612)
JAMES D. BOYLE, ESQ. (NBN 08384)
JOANNA M. MYERS, ESQ. (NBN 12048)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

**ROTTENBERG LIPMAN RICH, P.C.**

HARRY W. LIPMAN, ESQ.
RICHARD E. ROSBERGER, ESQ.
230 Park Avenue, 18th Floor
New York, New York 10169

*Attorneys for Plaintiffs*

13119-01/2087222.docx