**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ZITAN TECHNOLOGIES, LLC, et al.,

        Plaintiffs,

vs.

LIANG YU,

        Defendant.

3:18-cv-00395-RCJ-WGC

**ORDER**

Pending before the Court are: (1) Plaintiffs' Motion for Temporary Restraining Order (ECF No. 14); (2) Plaintiffs' Motion for Preliminary Injunction (ECF No. 15); (3) Plaintiffs' unopposed Motions to Seal (ECF Nos. 16, 19); and Plaintiffs' unopposed Motion for Leave to File Excess Pages (ECF No. 29). For the reasons given herein, the Court denies Plaintiffs' Motion for Temporary Restraining Order, orders a hearing on Plaintiffs' Motion for Preliminary Injunction, and grants Plaintiffs' Motions to Seal and Motion for Leave to File Excess Pages.

**I.    FACTS AND PROCEDURAL BACKGROUND**

This action involves alleged misappropriation of trade secrets and breach of contract. Defendant was employed as a quantitative researcher by Zitan Technologies ("Zitan") for approximately three years. (Def.'s Opp'n to Pls.'s Mot. for TRO & Prelim. Inj. 2:3–2:4, ECF No. 23.) On Thursday, March 22, 2018, Defendant had an annual performance review with Zitan CEO Changchun Shi and CTO Joohan Lee, during which they discussed promoting Defendant to

portfolio manager. (*Id.* 2:12–2:15.) A follow-up meeting to further discuss the promotion was scheduled for Tuesday, March 27, 2018. (*Id.*) On Friday, March 23, 2018, Defendant was working from home, which was his norm during the prior two years, and after allegedly experiencing technical issues with his work-issued laptop, he downloaded all the files that he had created as an employee, as well as a few additional documents that he was working on, from Dropbox to his personal computer. (*Id.* 2:16–2:26.) Defendant claims that the purpose was to gather information regarding his work achievements to prepare for his upcoming promotion meeting. (*Id.* 2:18–2:20.) The documents that Defendant accessed were documents that he was allowed to access at any time and that he was expected to access as part of his job responsibilities. (*Id.* 3:2–3:4.) After downloading the files on his personal device, Defendant realized that he "should probably not have," and claims that he deleted the files from his computer. (*Id.* 2:26–2:28.) Defendant additionally deleted documents from Evernote, an application for organizing and archiving notes, (*id.* 3:28.), and, according to Plaintiffs, also deleted source code, data files, and the command history of his work computer, (Pls.'s Mot. for TRO & Prelim. Inj. 7:13–7:14, ECF No. 14.) On March 28, 2018, Defendant was promoted to senior quantitative researcher. (Def.'s Opp'n 4:9, ECF No. 23.) However, Defendant claims that he was disappointed that he was not promoted to the position formerly discussed with Zitan's CEO and CTO, and he resigned on April 9, 2018. (*Id.* 4:10–4:11.)

On May 3, 2018, Plaintiffs sent a letter to Defendant purporting to retroactively terminate his employment for cause, demanding that Defendant return all company information, and requiring Defendant to turn over to a forensic vendor all of his personal electronic devices and disclose his usernames and passwords to all electronic storage applications for inspection. (Pls.'s Mot. 7:16–7:24, ECF No. 14.) After receiving the letter, Defendant destroyed the hard drive to his personal computer, supposedly to permanently terminate the ability to access the files that he

downloaded on his computer, and Defendant sent his personal laptop (with a replacement hard drive), iPhone, and provided access to his personal email, Dropbox, and other cloud-based accounts to Setec Security Technologies, Inc. ("Setec"), a forensic information technology vendor, for preservation and imaging. (Def.'s Opp'n 4:21–5:5, ECF No. 23.) Until this lawsuit was filed, Plaintiffs and Defendant had been negotiating a fair process to review the information that Defendant provided to Setec. (*Id.* 7:7–7:21.) After negotiations broke down, each side faulting the other, Plaintiffs filed suit on August 17, 2018 alleging misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and Nevada's codification of the Uniform Trade Secrets Act ("UTSA"), NRS 600A.010, as well as breach of contract concerning Zitan's Confidentiality Agreement, Data Policy, Communication Policy, and Termination Letter, (Pls.'s Mot. 3:8–3:14, ECF No. 14.)

## II. LEGAL STANDARDS

A temporary restraining order should be limited to carrying out its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods v. Bd. of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439 (1974). It "is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Temporary restraining orders are durationally limited and automatically expire, as their purpose is to preserve the status quo until a hearing can be held for a preliminary injunction. Fed. R. Civ. P. 65(b)(2); *Winter*, 555 U.S. at 24. Such orders are non-appealable, *Mayweathers v. Gomez*, 60 F.3d 833 (9th Cir. 1995); *Forest v. F.D.I.C.*, 976 F.2d 736 n.1 (9th Cir. 1992), and are committed to the sound discretion of the trial court, *Jimenez v. Barber*, 252 F.2d 550, 554 (9th Cir. 1958). A temporary restraining order "may only be awarded upon a clear showing [by] the plaintiff [that it] is entitled to such relief." *Winter*, 555 U.S. at 22.

While temporary restraining orders differ in many important respects from preliminary injunctions, the standard for granting a temporary restraining order and a preliminary injunction is the same. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that a separate analysis was not required because the analysis is "substantially identical" for a temporary restraining order and a preliminary injunction); *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1123 (D. Nev. 2013). To obtain preliminary injunctive relief, the Ninth Circuit has established two alternative sets of criteria:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). The Supreme Court later ruled, however, that a plaintiff seeking a preliminary injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. 7, 19–23 (2008) (rejecting the alternative "sliding scale" test, at least as to the irreparable harm requirement). In *Stormans, Inc. v. Selecky*, the Ninth Circuit recognized that the "possibility of irreparable injury" test was "definitively refuted" in *Winter* and that the appropriate standard "requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20) (reversing a district court's use of the Court of Appeals' pre-*Winter*, "sliding-scale" standard and remanding for application of the proper standard).

However, the Ninth Circuit later held in *Alliance for the Wild Rockies v. Cottrell* that although irreparable harm must be more likely than not, the sliding scale approach remains

viable as to the other requirements, and a plaintiff needn't be more likely than not to succeed on the merits, so long as there are "serious questions" on the merits. 632 F.3d 1127, 1134–35 (9th Cir. 2011) ("That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, . . . [if] the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."). *Cottrell* presents some difficulty in light of *Winter* and *Stormans*. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Stormans*, *Stormans* should control. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (*en banc*) (discussing the standards for determining controlling authority).

The Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20. As a matter of grammar, the Supreme Court has laid out four conjunctive tests, not a four-factor balancing test, using the word "likely" to modify the success-on-the-merits test in exactly the same way as the irreparable-harm test. In finding the "possibility" of irreparable harm to be insufficient, the *Winter* Court itself emphasized (with italics) the fact that the word "*likely*" modifies the irreparable-harm prong. *Id.* at 22. The word "likely" modifies the success-on-the-merits prong in a textually identical way. *Id.* at 20. Therefore, to satisfy *Winter*, a movant must show that he is likely to succeed on the merits and suffer irreparable harm.

Regarding the irreparable-harm test, *Winter* is clear that the word "likely" means what it normally means, i.e., more probable than not. There is tension in the case law, however, as to the meaning of likely as applied to the success-on-the-merits test. Black's Law Dictionary defines the "likelihood-of-success-on-the-merits test" as "[t]he rule that a litigant who seeks [preliminary

relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1069 (10th ed. 2014). A Ninth Circuit case predating *Cottrell* that used the "serious questions on the merits standard" as an alternative to a "probability of success on the merits" defined serious question as a "fair chance of success on the merits." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1985). The Ninth Circuit has reiterated the "fair chance" language since *Cottrell*. *See, e.g.*, *Arc of Cal. v. Douglas*, 757 F.3d 975, 993 (9th Cir. 2014).

## III. DISCUSSION

Plaintiffs have alleged that a temporary restraining order is necessary to protect Plaintiffs' "trade secrets and proprietary information and data." (Pls.'s Mot. 2:8, ECF No. 14.) However, Plaintiffs have failed to show that a likelihood of irreparable harm exists.

A likelihood of irreparable harm requires a plaintiff to demonstrate that such harm is more probable than not. *Winter*, 555 U.S. at 22. Speculative injury is insufficient. *Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 472 (9th Cir. 1984). A temporary restraining order "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2948 (3d ed. 2018)).

Plaintiffs incorrectly argue that irreparable harm can be presumed in cases that involve trade secret misappropriation and breach of confidentiality. (Pls.'s Mot. 19:23–19:24, ECF No. 14.) To support this proposition, Plaintiffs rely on pre-*Winter* case law and fail to apprehend the import of *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). (Pls.'s Mot. 19:25–20:5, ECF No. 14.) In *eBay*, the Supreme Court rejected the position that injunctive relief is appropriate once patent infringement is established. 547 U.S. at 393–94. The Court held that plaintiffs must satisfy the traditional "four-factor test before a court may grant such relief." *Id.* at

391. And in *Winter*, the Court made clear that the traditional test requires plaintiffs to establish that irreparable injury is *likely*. *Winter*, 555 U.S. at 22. Therefore, courts are not permitted to "presume irreparable harm, even in intellectual property cases." *Credit Bureau Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1122–23 (E.D. Cal. 2010); *see, e.g.*, *N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211 (11th Cir. 2008) ("Even though we hold that [the plaintiffs] have established a substantial likelihood of success on the merits of their trademark infringement and false advertising claims, we must still evaluate whether [the plaintiffs] have demonstrated, with respect to each claim, that they will suffer irreparable harm in the absence of an injunction."). Demonstrating the inherent possibility of irreparable harm is *per se* insufficient. *Winter*, 555 U.S. at 22. Plaintiffs must prove that they either suffered irreparable harm or will likely suffer such harm.

The fact that the Zitan Confidentiality Agreement contains language that Zitan is entitled to preliminary injunctive relief based upon breaches of its trade secrets and confidential information "is not controlling." *Giftango, LLC v. Rosenberg*, 925 F. Supp. 2d 1128, 1140 (D. Or. 2013) ("Furthermore, the fact that the Confidentiality Agreements contain language that any violation of the non-solicitation provision constitutes irreparable harm is not controlling."); *see also Inspection Mgmt. Sys., Inc. v. Open Door Inspections, Inc.*, No. 2:09–cv–00023–MCE–GGH, 2009 WL 805813, at *4–5 (E.D.Cal. Mar. 26, 2009) ("Plaintiff cannot rely on the contractual provisions of the EULA to show irreparable harm. Instead, the court must make an independent determination of whether such harm is present") (citing, *inter alia*, *Int'l Ass'n of Plumbing & Mech. Officials v. Int'l Conference of Bldg. Officials*, No. 95–55944, 1996 WL 117447, at *2 n.3 (9th Cir. Mar. 15, 1996) (stating that a contractual provision is evidence of irreparable injury but it does not abrogate a court's obligation to make a finding of irreparable

harm)). This Court has an independent duty to determine whether Plaintiffs suffered or will likely suffer irreparable harm.

In the present case, Plaintiffs' assertions only amount to the possibility of irreparable harm. While it is true that "loss of a property interest in and diminution in value of trade secrets and confidential information are the types of harms that 'are not readily addressed through payment of economic damages,'" Plaintiffs have failed to show that it is likely that such irreparable harms will occur. *Wellness Coaches USA, LLC v. MGM Resorts Int'l*, No. 2:15-CV-01593-JAD, 2015 WL 5146701, at *6 (D. Nev. Sept. 1, 2015) (quoting *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919 (D. Nev. 2006)). Courts that have adhered to the formula in *Winter* have found that a likelihood of irreparable harm exists where plaintiffs have provided evidence of specific, manifest acts by defendants, such as evidence of utilization or attempted utilization of a plaintiff's trade secrets, evidence of competition with a plaintiff after acquiring a plaintiff's trade secrets, or evidence of solicitation of customers, especially a plaintiff's, after obtaining a plaintiff's trade secrets. *E.g.*, *H.Q. Milton, Inc. v. Webster*, No. 17-CV-06598-PJH, 2017 WL 5625929, at *4 (N.D. Cal. Nov. 22, 2017) (holding that a plaintiff established irreparable harm where a defendant utilized confidential information and trade secrets and solicited the plaintiff's customers); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (granting a temporary restraining order where a defendant allegedly misappropriated customer information and sought to solicit and divert a plaintiff's customers); *Aerodynamics Inc. v. Ceasars Entm't Operating Co.*, No. 2:15-CV-01344-JAD, 2015 WL 5679843, at *12 (D. Nev. Sept. 24, 2015) (holding that a likelihood of irreparable harm existed where a defendant contacted a seller, former customer, manufacturer, and competitor after a deal fell through with a plaintiff and the defendant gained confidential information); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 11-02460C, 2011 WL 2607158, at *22 (N.D. Cal. July 1,

2011) ("[T]o the extent that Defendants are using Plaintiff's trade secrets to compete with Plaintiff and to encourage Plaintiff's customers to switch their accounts . . . the Court agrees that Plaintiff has shown a likelihood of irreparable harm."); *Credit Bureau Connection*, 726 F. Supp. 2d at 1123 (holding that irreparable harm existed where a defendant admitted to blocking, interfering, and diverting existing customers and new potential customers of a plaintiff ).

Consistent with *Winter*, courts have denied injunctive relief where plaintiffs have failed to provide evidence to support the proposition that irreparable harm is likely rather than possible. *E.g.*, *Dahl v. Swift Distribution, Inc.*, No. CV 10-00551 SJO(RZX), 2010 WL 1458957, at *11 (C.D. Cal. Apr. 1, 2010) (holding that a plaintiff did not demonstrate that irreparable harm was likely, because the plaintiff did not provide specific, concrete evidence to support its claim trademark infringement would harm its reputation, goodwill, sales, profit margins, and lead to a loss of customers). In one salient example, a court of this District denied a motion for a temporary restraining order after a defendant solicited one of a plaintiff's customers after obtaining confidential information, because the court held that a single instance of solicitation was not enough to prove that the solicitation would continue and therefore that irreparable harm was likely. *Wells Fargo Clearing Services, LLC v. Foster*, No. 3:18-cv-00032-MMD-VPC, 2018 WL 1746307, at *3 (D. Nev. Apr. 11, 2018).

Here, Plaintiffs claim that Defendant unlawfully downloaded Plaintiffs' confidential assets to his personal computer and/or electronic storage devices, deleted twenty-six files from a work account, and attempted to cover his tracks by deleting electronic evidence and destroying his hard drive. (Pls.'s Mot. 2:16–2:23, ECF No. 14.) Plaintiffs allege that Defendant obtained confidential assets to "improperly utilize [them] for his own benefit and/or the benefit of others." (*Id.* 4:2.) However, Plaintiffs have not provided evidence to support the assertion that Defendant obtained confidential information for his benefit and/or the benefit of others. Plaintiffs' evidence,

in sum, establishes that Defendant downloaded confidential information that he was permitted to access while working from home on his personal computer and that disclosure or misuse of such information would be harmful. But Plaintiffs have not established that misuse or disclosure is likely. Plaintiffs have not provided any evidence or alleged that Defendant is working for a competitor or competing against Plaintiffs. Nor have Plaintiffs provided evidence or alleged that Defendant is actively using, selling, offering, accessing, profiting, or attempting to do anything with the information that was downloaded.

While this Court has held that downloading confidential information immediately after termination coupled with efforts to cover up such acts evidences an intent to use data against a company's interests, Defendant downloaded the confidential information on March 23, over two weeks before he resigned on April 9, while on good terms with Plaintiffs. *Prot. Techs., Inc. v. Ribler*, No. 3:17-cv-00144-LRH-WGC, 2017 WL 923912, at *2 (D. Nev. Mar. 8, 2017). In fact, after Defendant downloaded the confidential information, he was promoted. (Def.'s Opp'n 4:9, ECF No. 23.) Defendant contends that he downloaded the files in preparation for his upcoming promotion meeting after he discussed a promotion with the CEO and CTO of Zitan the day before, and he only accessed the files on his personal computer because he was experiencing technical issues using his work issued laptop while working from home. (*Id.* 2:12–2:26.) Defendant also asserts that he did not delete files to cover up his actions, but instead deleted files, which could be accessed elsewhere by company employees, to purge duplicative documents. (*Id.* 3:24–4:7.) Immediately after downloading the files, Defendant alleges that he deleted the files from his personal computer and that he destroyed his hard drive to ensure that the files he downloaded could not be recovered. (*Id.* 2:26–2:28, 4:21–4:26.) Thus, given the conflicting, reasonable inferences that could be drawn from the evidence, this Court is unable to infer that Defendant downloaded the confidential information to use against Plaintiffs.

The uncertainty of Defendant's intent is further illustrated by Plaintiffs' actions after learning that Defendant downloaded the confidential files and by Plaintiffs' delay in filing suit. After discovering supposed wrongdoing by Defendant, Plaintiffs sent a letter to him on May 3 and did not seek a temporary restraining order until August 17, nearly five months after Defendant downloaded the files. Until filing suit, Plaintiffs had been negotiating with Defendant appropriate protocol to forensically examine the data Defendant provided to Setec. (*Id.* 7:7–7:21.) A fundamental objective was to determine whether Defendant in fact still possessed the confidential information or whether Defendant was telling the truth that he did not retain the files that he downloaded. Plaintiffs only filed suit after negotiations broke down regarding reasonable and fair search procedures. Resolving that dispute with a temporary restraining order, absent other evidence of wrongdoing, is inappropriate.

Furthermore, the risk of destruction of evidence and disclosure of confidential information is minimized here, since Defendant has sent his iPhone, personal laptop (with a replacement hard drive), and has provided access to his email, Dropbox, and other cloud-based accounts to Setec for preservation and imaging, which was completed in June 2018. (*Id.* 4:27–5:6.) Thus, the need for a temporary restraining order is diminished to prevent the disclosure or destruction of confidential information.

Although Plaintiffs may be "exposed" to irreparable harm, Plaintiffs have not demonstrated that such future harm is likely or that they have presently suffered irreparable harm. Defendant was entitled to access all the files that he downloaded and was already privy to the information that he accessed. While downloading these files on a personal device may violate Defendant's contractual obligations, it does not automatically constitute irreparable harm. Consequently, this Court holds that Plaintiffs have failed to meet the requisite burden to establish that they have suffered or will likely suffer irreparable harm.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion for Temporary Restraining Order (ECF No. 14) is DENIED.

IT IS FURTHER ORDERED that oral argument on Plaintiffs' Motion for Preliminary Injunction (ECF No. 15) is set for 10:00 A.M., Tuesday, November 13, 2018, in Reno Courtroom 3, before Judge Robert C. Jones.

IT IS FURTHER ORDERED that Plaintiffs' Motions to Seal (ECF Nos. 16, 19) are GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File Excess Pages (ECF No. 29) is GRANTED.

Dated this 17th day of October, 2018.

_____
ROBERT C. JONES
United States District Judge